## T. S. C. MOTOR FREIGHT LINES v. LEONARD TRUCK LINES, Inc.
### Civil Action No. 1164.

District Court, W. D. Louisiana,
Shreveport Division.

Nov. 18, 1944.

Stafford & Pitts, of Alexandria, La., and Rawlings, Sayers & Scurlock and Glover C. Johnson, all of Fort Worth, Tex., for plaintiff.

Robert L. Garrett, of Shreveport, La., for defendant.

DAWKINS, District Judge.

Plaintiff demands the specific performance of an agreement concerning the transfer of certificates of authority from the Interstate Commerce Commission and the Louisiana Public Service Commission, authorizing the operation of a trucking or transportation line over certain highways in the state. Defendant has filed a motion to dismiss for the reason, as it contends, "the complaint fails to state a claim in which relief can be granted."

The basis for the motion to dismiss is that defendant says the contract involves the giving of earnest money and a stipulation for liquidated damages, which, (1) permits it to decline performance by returning the amount deposited with a like sum, and (2) that under Article 1927 of the Civil Code, the remedy for breach of contract is damages, unless adequate relief can be afforded only by specific performance. On the other hand, plaintiff claims that the contract amounts to the sale of an option to buy, which, when exercised within the prescribed period, becomes enforceable under Article 2462 of the Louisiana Code as amended by the Act of 1910, Act No. 249 and 2d Ex.Sess. No. 3, and Act of 1920, Act No. 27. The issue thus raised is one of law under the provisions of the contract.

In the first paragraph of the contract the parties are referred to as "seller" (present defendant) and "purchaser" (plaintiff) and the terms are used throughout the contract. Other pertinent provisions are as follows:

"For and in consideration of the sum of Five Thousand and No/100 Dollars ($5,000.00) paid and to be paid by purchaser to seller as hereinafter set out, seller does by these presents, grant and give to purchaser the exclusive right to purchase said certificates of convenience and necessity and operating rights * * *" Article III.

"The terms and conditions of this Contract and Option are as follows:

"(a) Purchaser shall have the absolute right to purchase the above described certificates and operating rights at any time not later than August 22nd, 1944, for said sum of Five Thousand and No/100 Dollars ($5,000.00), and has this day deposited with W. S. Young (Escrow Agent) the sum of One Thousand and No/100 ($1,000.00).

"(b) In the event purchaser exercises their option to purchase said certificates they shall notify seller of such intention on or before said date, and seller agrees to execute and cause to be executed all necessary instruments, documents for the purpose of conveying title absolute to said certificate and operating rights to purchaser upon purchaser paying to seller the additional sum of Four Thousand & No/100 Dollars ($4,000.00) in cash, at the time the approval of the regulatory bodies having jurisdiction thereof have approved said transfer and sale, and thereupon the said Escrow Agent is authorized and directed to pay the One Thousand & No/100 ($1,-

000.00) this day deposited with him to seller.

"(c) In the event purchaser does not elect to exercise their right of purchase of said certificates on or before August 22nd, 1944, then at the expiration of said time said Escrow Agent is hereby directed and authorized to pay said sum of One Thousand & No/100 Dollars to seller as liquidated damages herein, and both parties, purchaser and seller, shall be fully released from further obligation hereunder.

"(d) In the event purchaser exercises said option to purchase within the said time, both parties mutually agree to cooperate one with the other in furnishing to the respective regulatory bodies having jurisdiction thereof all evidence and proof, documentary or otherwise, which may be required under the rules and regulations of said bodies in order to speedily and effectually consummate the sale and transfer of said certificates; provided, however, that in the event either or both of said regulatory bodies fail and refuse to approve the application for the sale and transfer of the property described herein to purchaser without fault on the part of purchaser, then seller and the Escrow Agent obligate themselves to immediately pay over to purchaser the said One Thousand and No/100 Dollars ($1,000.00) this day deposited with said Escrow Agent, and this contract shall thereupon terminate and each party fully released from further liability hereunder.

"In the event purchaser exercises their option to purchase said certificates and operating rights above described under the foregoing agreement, seller agrees that it will execute and cause to be executed, such further instruments evidencing the terms of a sale and transfer thereof as may be required by the regulatory bodies having jurisdiction thereof, and that pending the terms of this option agreement or any period of time required for the actual acquisition and operation by purchaser, it will continue to carry on a motor carrier operation thereunder and preserve its present operating rights in a business like manner, and shall convey to said purchaser (in the event they exercise their option to purchase) said certificates and operating rights free of all claims, debts or demands." Article V.

"It is mutually understood and agreed by the parties hereto that any absolute sale and transfer of certificates and operating rights hereinabove mentioned shall be subject to the regulatory bodies having jurisdiction thereof; and that in making application for approval of said transfer and sale the proof and information required by said regulatory bodies will be furnished by each party respectively at its own expense and cost.

"The terms of this contract shall be binding upon the parties hereto, their successors and assigns." Article VI.

Ordinarily, in purchasing an option for a stipulated amount the agreement would recite that for the price named the proposed seller had given or sold to the proposed purchaser the right and option to buy. No reason can be advanced, it is believed, why, in the same contract it could not be provided that, in event of the exercise of the option, the amount so paid could be applied on the purchase price. Nor can I see anything in the law to prevent coupling therewith a condition, where necessary, that the transfer shall be approved by someone else, such as the federal and state agencies named in this instance, but failure to obtain which, without fault of either party, would require a return of the price of the option. Then, too, the very meaning of the word "option" implies a right to act or not as the optionee may choose, and is in reality the thing which he purchases. Here, we have rather unusual provisions which partake of the nature of an agreement to sell the property itself rather than an option to purchase. Article III of the contract begins by saying:

"For and in consideration of the sum of Five Thousand and No/100 Dollars ($5,000.00) paid and to be paid by purchaser to seller as hereinafter set out, seller does by these presents grant and give to purchaser"—What? "the exclusive right to purchase * * *."

Does the including of the words "exclusive right to purchase" add anything to or change the situation from what it would have been had the recital simply said: "The seller by these presents does agree to sell and convey" the property in question?

It will be noted that the first paragraph of Article III does not recite that for the price and consideration of $1000 the option to purchase within the time agreed upon is conveyed; but that for the consideration "of $5000 paid and to be paid the purchaser is given the exclusive right to purchase said certificates * * *." In the light of other provisions of the contract does this

mean anything more than a promise to sell and convey the property within the specified time, if accepted by the purchaser?

In the fifth paragraph it is again recited that the purchaser "shall have the absolute right to purchase * * * not later than August 22, 1944, for said sum of Five Thousand Dollars ($5000.00)" and then follows the statement that the One Thousand Dollars ($1000.00) had been "this day deposited with W. S. Young (escrow agent) * * *." Young was an officer of defendant, Leonard Truck Lines, Inc.

This would seem to be in keeping with the idea that it was to represent an instalment on the purchase price rather than consideration for the option. Immediately follows the provision that "in event purchaser exercises their option * * * seller agrees to execute necessary instruments * * * upon purchaser paying to seller an additional sum of Four Thousand Dollars ($4000.00) in cash * * * and thereupon the escrow agent is authorized and directed to pay the $1000 this day deposited with him, to the seller." Then subparagraph (c) of Article V of the contract provides that "in event purchaser does not elect to exercise their right to purchase * * * said escrow agent is hereby directed and authorized to pay said sum of $1000 to seller as *liquidated damages* herein, and both parties, purchaser and seller, shall be fully released from further obligation hereunder."

■■ Of course, primarily, the controlling consideration is to ascertain and apply the intent and purpose of the parties within the applicable law. It is not believed that the amendments of 1910 and 1920 to Article 2462 of the Code were intended to abrogate other provisions found in other articles and particularly in Article 2463 of the Civil Code, reading as follows:

" * * * But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to-wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."

If not, then contracts may still be made with the giving of earnest money "to bind the trade," and where a reasonable interpretation justifies the conclusion that such was intended, either party may decline to perform on the terms stated by the article just quoted.

■ The language of the second paragraph of Article 2462 as amended declares that "One may purchase the right or option * * * for any consideration therein stipulated * * *," which, if "accepted within the time stipulated, * * * may be specifically enforced by either party." Purchase implies a sale and sale requires a price or consideration. Nowhere in the contract is it said that $1000 or any other sum or thing is paid for an option as such, disassociated with and separate from the price to be paid for the property on conveyance, while in sub-section (c) of Article V it is said, "the escrow agent is * * * directed to pay said sum of One Thousand Dollars ($1000.00) to seller as liquidated damages (not as the consideration for the option), and both parties, purchaser and seller, shall be fully released from further obligation hereunder." Damages could arise only from a breach of the contract; and if the intention was to grant an option to buy or not, the failure to do so would not constitute a breach but the exercise of a right specifically paid for. Which is the more reasonable conclusion to draw from the language of the agreement thus discussed: (1) That the parties intended and did sell and purchase an option, or (2) that there was an agreement to sell for a fixed price within a limited time, with the consequence that if the proposed purchaser decided not to buy, he should forfeit the One Thousand Dollars ($1000) placed in escrow as "liquidated damages"? If the former, then the plain letter of the law entitles either party to require specific performance; if the latter, Article 2463 would seem to permit either to withdraw for the consideration therein provided.

Until the amendments in 1910 and 1920 of Article 2462 of the Code there had been much confusion and some apparent vacillation in the jurisprudence of the state as to when specific performance would or would not be accorded. It was doubtless because of this that the Legislature sought to overcome that condition by clear provision that those wishing to sell and purchase an option, could do so, and be able to enforce it. Yet, in providing this remedy, I do not think it can be assumed that the lawmakers intended to change the policy of the law as expressed in other pro-

visions of the Code such as Articles 1926 and 1927 that for ordinary breaches of contract the aggrieved party should recover damages instead of specific performance. These last two articles are quoted as follows:

" * * * On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section." Article 1926.

" * * * In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts." Article 1927.

 As the law now stands the parties are at liberty, it would seem, to enter into any one of four types of contract with respect to the acquisition of property: (1) The sale and purchase of an option, which, if accepted, within the time stipulated may be specifically enforced by either party; (2) agreements to sell with the giving of earnest money, from which either may withdraw by forfeiting the amount of money involved; (3) agreements, for the breach of which damages would sufficiently compensate the aggrieved party; and (4) those particular . types of contracts, where, for special reasons, damages would not adequately compensate one against whom a breach had been committed. No particular form or wording in any of these instances is prescribed or essential, but the object of the court in all cases should be to ascertain and enforce the intentions of the parties. However, it does seem that if the purpose is to avoid the express policy of awarding damages for ordinary breaches, there should be a reasonably clear and exact compliance with the requirements of the statutory changes.

Numerous cases have been cited by both sides wherein specific performance was awarded or denied according to the circumstances in each instance, but it is not believed necessary to review at length the jurisprudence which preceded the amendments of 1910 and 1920. Counsel, in some instances, have relied upon the same cases; but at last we have to seek the intention of the parties, which is to be gathered from the contract, where that is clear, or determined by all the circumstances where there is ambiguity. No controlling decision by the state court has been found, where the provisions of the contract were like the present, but after careful consideration, I am constrained to hold that this case must be governed by Article 2463 of the Code, and that agreement involved the giving of earnest money, which permits defendant to decline by forfeiting $1000. Plaintiff's right to recover the sum deposited in escrow and to sue defendant for the sum of One Thousand Dollars is reserved.

Proper decree should be presented.