McCABE, P. J.
 

 At some date in mid-July 1964, the parties hereto entered into an escrow agreement to buy and sell the real property which is the subject of this litigation. The pur
 
 *267
 
 chasers deposited $10,000 into that escrow, which upon the subsequent cancellation of the escrow due to the purchasers’ inability to perform, the $10,000 was later returned to them.
 

 On November 16, 1964, a second escrow was opened at a title company in which the purchasers, and plaintiffs herein, deposited $20,000. The $20,000 was to be immediately released to defendants by the terms of the proposed escrow agreement when all the parties to the escrow had signed the escrow instructions. As herein relevant, these executed instructions provided: “I hereby agree to purchase the hereinafter described property for a total consideration of $380,000.00 and will on or before February 16, 1965,
 
 [1]
 
 hand you said consideration which is payable as follows:
 

 “$20,000,00 to be deposited and released upon signing of escrow instructions; $80,000.00 to be deposited on or before close of escrow; balance of $280,000.00 to be evidenced by a purchase money deed of trust as set forth below.
 

 “I will deliver to you any additional funds and execute any instruments which are necessary to comply with the terms hereof, all of which you may use when you hold me for a deed executed by Allan A. Fainbaeg. . . .
 

 i l
 

 “The $20,000.00 released upon the signing of the escrow instructions will apply on the purchase price and the $20,000.00 so released will be considered as a payment for an option for the purpose of keeping the escrow open for the 90 day period.
 

 t l
 

 “Time is the essence of this agreement and option, and if not closed on or before 90 days as set forth herein, escrow holder is hereby ordered by both buyer and seller to automatically cancel this escrow.
 

 “The losing of this escrow shall be 90 days from the date all parties sign the escrow instructions. ...”
 

 The $20,000 was in fact released to the sellers by the escrow holder upon the execution by both parties of the escrow agreement.
 

 Thereafter, on November 23, 1964, the parties further defined their legal relationship by the joint execution of supplemental escrow instructions, which further provided:
 

 
 *268
 
 “The above escrow is hereby amended as follows:
 

 “The closing date shall be February 20, 1965,
 

 “As further consideration for the release of the $20,000.00 the sellers will be entitled to retain said $20,000.00 in event this escrow is cancelled as liquidated damages.”
 

 ' ■ The purchasers failed to tender the required down payment and the escrow failed to close within the agreed upon period. In March 1965 the buyers filed the present action against the sellers to recover the $20,000 deposit, claiming the refusal of the sellers to return the deposit was a forfeiture and penalty and not legally liquidated damages. The trial court disallowed their claim and entered judgment for the defendants.
 

 • On this appeal both parties recognize that the principal issue to which each side must respectively address itself is whether the parties intended an option for the purchase of the real property for which the $20,000 was consideration, or whether they intended a bilateral sale agreement with a liquidated damage provision.
 

 , The. trial court construed the two agreements as an option relying upon the time of the essence clause for that construction contained in the first agreement for its determination.
 

 The interpretation of this agreement by the trial court is not binding upon this tribunal. In
 
 Estate of Platt,
 
 21 Cal.2d 343 at p. 352 [131 P.2d 825]: “An appellate court is: not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [cases cited], where there is no conflict in the evidence [case cited], or a determination has been made upon incompetent evidence [ease cited]. ’ ’
 

 “ It is therefore solely a judicial function to interpret" a written instrument unless the interpretation turns upon the - credibility of extrinsic evidence. ’ ’
 
 (Parsons
 
 v.
 
 Bristol Dev. Co.,
 
 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; see also
 
 McManus
 
 v.
 
 Sequoyah Land Associates,
 
 240 Cal.App.2d 348, 353 [49 Cal.Rptr. 592].) Thus it devolves upon this "court to interpret anew the intent of the parties in the. execution of this agreement unless such interpretation depends upon the credibility of extrinsic evidence received for that purpose.
 

 It is equally we1! established that the form and name of an instrument are not controlling, for the law looks through the form to substance and gives effect to the inten
 
 *269
 
 tion of the parties.
 
 (Crowe
 
 v.
 
 Gary State Bank
 
 (7th Cir. 1941) 123 F.2d 513, 515;
 
 Scarbery
 
 v.
 
 Bill Patch Land & Water Co.,
 
 184 Cal.App.2d 87, 100 [7 Cal.Rptr. 408];
 
 Marquez
 
 v.
 
 Cave,
 
 134 Kan. 374 [5 P.2d 1081, 1082].) Thus, the express terms, such as “option” or “liquidated damages,” as used by the parties are not solely controlling of the interpretation of the agreement as executed.
 

 Without, for the moment, passing upon the question of whether the supplemental escrow instructions in any way superseded some of the provisions of the original agreement, we must first note the $20,000 deposit is arguably given as recited consideration for (1) part payment on the purchase price, (2) payment for a 90-day option, (3) consideration for keeping the escrow open “for the 90 day period,” and (4) liquidated damages in the event of cancellation of the escrow. The first and fourth covenants or provisos would seem to infer a bilateral purpose agreement whereas the second inconsistently infers the conference of a unilateral right to purchase at the buyers’ option. Yet this very inconsistency demonstrates the patent ambiguity of the agreement.
 

 Over defense counsel’s continuing objection, extrinsic evidence was admitted to enable the trial court to interpret this agreement. The admission of this evidence was proper. Parol evidence is also admissible to aid in the interpretation of an ambiguous contract or writing.
 
 (California Emp. etc. Com.
 
 v.
 
 Walters,
 
 64 Cal.App.2d 554, 559 [149 P.2d 17].) As the court said in
 
 California Emp. etc. Com.
 
 v.
 
 Walters, supra, “
 
 [T]he very fact, however, that plaintiff questioned the meaning of certain words and clauses used in framing the agreement itself shows that it was ambiguous.
 
 (Body-Steffner Co.
 
 v.
 
 Flotill Products, Inc.,
 
 63 Cal.App.2d 555 [147 P.2d 84].)”
 
 (Chastain
 
 v.
 
 Belmont,
 
 43 Cal.2d 45, 51 [271 P.2d 498]; see also
 
 Decter
 
 v.
 
 Stevenson Properties, Inc.,
 
 39 Cal.2d 407, 416 [247 P.2d 11];
 
 Union Oil Co.
 
 v.
 
 Union Sugar Co.,
 
 31 Cal.2d 300, 306 [188 P.2d 470];
 
 Von Rohr
 
 v.
 
 Neely,
 
 76 Cal.App.2d 713, 715-716 [173 P.2d 828];
 
 Estate of Dean,
 
 68 Cal.App.2d 86, 92 [155 P.2d 901];
 
 Gibson
 
 v.
 
 DeLaSalle Institute,
 
 66 Cal.App.2d 609, 619 [152 P.2d 774].)
 

 In summary, plaintiff Welk admitted that at the initial meeting between the parties defendant Fainbarg mentioned an option with respect to the property.
 
 [2]
 
 When questioned
 
 *270
 
 as to the particulars of that discussion, he was unable to recall them even after his recollection had been refreshed by his deposition in which he admitted that the “gist of [that discussion] was that we had a 90-day option to purchase the land. ’ ’
 

 The testimony of the defendant Fainbarg alternately indicated that at the parties' initial meeting, after the July escrow had closed, Welk had said, “He had been interested in purchasing our property and I said the only way that we would ever consider selling it now after this last deal is to get an option, and we’d give him an option for a certain amount of money. If he’s willing to, he can come over to our office and discuss it.” Defendant Fainbarg testified that plaintiff Welk responded, ‘ ‘ That would be fine. ’ ’
 

 At a later meeting Fainbarg indicated this oral understanding was reiterated; that Fainbarg stated he would give them an option for 90 days for $20,000 to which Welk and Zevon agreed. Thereupon Welk produced a deposit receipt, which was altered and signed at that meeting, although not in evidence, and Welk then took it with him to open the
 
 *271
 
 escrow at Orange County Title Company. From the record before this court neither of the plaintiffs mentioned at any time herein relevant that the parties discussed a binding agreement to purchase the property in question.
 

 In view of the circumstances under which the escrow instructions were executed, it cannot be reasonably construed in the manner urged by plaintiffs. The plaintiffs had once before contracted to purchase the property in question and failed to complete the transaction. The sellers were cautious in their subsequent contractual relationship with these buyers because of their knowledge of the buyers’ undercapitalization. The parties then drew up a deposit receipt, which is not a part of the record, which the plaintiffs then utilized to cause to be drafted the escrow agreement here in question.
 

 Although the printed portion of the formula escrow instructions contains an apparent mutual covenant to purchase and sell the property, the typed portions of the agreement make provision, inconsistently, for an option to purchase the property for a stated term. The later typed provisions must control the earlier printed portions in view of this inconsistency. (Code Civ. Proc., § 1862; Civ. Code, § 1651; Rest., Contracts, § 236[e];
 
 Lawrence Block Co.
 
 v.
 
 Palston,
 
 123 Cal.App.2d 300, 310 [266 P.2d 856].) This conclusion is also compelled in view of the fact that the agreement was drawn by an employee of the title company, one Williams, under the apparent direction of the plaintiffs.
 

 The repugnancy of the subsequent amendment to this construction must be reconciled, if possible, “by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.” (Civ. Code, § 1652; see
 
 Stockwell
 
 v.
 
 Lindeman,
 
 229 Cal.App.2d 750, 754-755 [40 Cal.Rptr. 555].) Hence, we conclude defendants’ use of the term “liquidated damages” in the supplemental escrow instructions was not meant in a technical sense and was not intended to create a bilateral contract in place of the pre-existing unilateral agreement in the original escrow instructions.
 

 In making this determination this court is aware that the inclusion of a covenant to purchase by the buyer has been construed to create a binding bilateral contract, see
 
 Imbach
 
 v.
 
 Schultz,
 
 58 Cal.2d 858, 861-862 [27 Cal.Rptr. 160, 377 P.2d 272], but the evidence herein indicates that the inclusion of such a provision in the present instance was inadvertent, at the plaintiffs’ direction, and in any event controlled by
 
 *272
 
 the subsequent inconsistent written provisions of the agreement.
 

 This court is further aware of the requirement of “meaningful separate consideration” to create a valid option to purchase as opposed to a mutually binding bilateral contract.
 
 (Caplan
 
 v.
 
 Schroeder,
 
 56 Cal.2d 515, 519 [15 Cal.Rptr. 145, 364 P.2d 321];
 
 Rodriguez
 
 v.
 
 Barnett,
 
 52 Cal.2d 154, 160 [338 P.2d 907].) In the present ease the evidence discloses the parties in part intended the $20,000 released from the escrow to be consideration for a 90-day escrow. The fact that it would also apply to the purchase price is not abhorrent to an option agreement, nor, standing alone, does it change an option agreement into a purchase agreement.
 
 (Country Club Oil Co.
 
 v.
 
 Lee,
 
 239 Minn. 148 [58 N.W.2d 247,
 
 250]; Barkhorn
 
 v.
 
 Adlib Associates, Inc.
 
 (D. Hawaii) 222 F. Supp. 339, as modified 225 F. Supp. 474;
 
 T.S.C. Motor Freight Lines
 
 v.
 
 Leonard Truck Lines
 
 (W.D.La.) 57 F. Supp. 628, 632; 1A Corbin,
 
 Contracts,
 
 § 263; 91 C.J.S.,
 
 Vendor & Purchaser,
 
 § 7, p. 849; 55 Am.Jur.,
 
 Vendor & Purchaser,
 
 § 32, pp. 502-503; see also
 
 Kelley
 
 v.
 
 Upshaw,
 
 39 Cal.2d 179 [246 P.2d 23].)
 

 “ [T]he test of whether an instrument is an option or a contract of sale is whether there is such an obligation on the part of the optionee to buy that it can be enforced by specific performance.”
 
 (Scarbery
 
 v.
 
 Bill Patch Land & Water Co., supra,
 
 at p. 100; see also
 
 People
 
 v.
 
 Ocean Shore R.R. Co.,
 
 90 Cal.App.2d 464 [203 P.2d 579];
 
 Asia Investment Co.
 
 v.
 
 Levin,
 
 118 Wash. 620 [204 P. 808, 32 A.L.R. 578].) In view of the patent inconsistency between the printed provisions of this instrument and its typed provisions, the latter of which are controlling, and the objective manifestations of the parties’ intention at the time of the execution of the instrument properly in evidence, the conclusion is inescapable that the agreement could not be enforced against the plaintiffs.
 

 Judgment affirmed.
 

 Kerrigan J., and Tamura, J., concurred.
 

 [1]
 

 Underlined portions were typed into the printed escrow instructions.
 

 [2]
 

 ‘ ‘
 
 Q. We were discussing this meeting that took place where you said that yourself and Mr. Zevon, the other plaintiff, and Mr. Fainbarg were present?
 

 
 *270
 

 “A.
 
 Yes.
 

 ‘ ‘
 
 Q. And it took place at or about the time these first escrow instructions were prepared, is that correct?
 

 ‘ ‘ A. That’s correct.
 

 “Q. And my question to you was, was there any discussion of an option at this meeting ?
 

 “A. Yes, there was.
 

 “Q. Who mentioned the option?
 

 “A.
 
 Mr. Fainbarg. I assume it was Mr. Fainbarg.
 

 “Q. What did Mr. Fainbarg state with respect to an option?
 

 “A.
 
 Now, frankly, I really don’t recall. The things that—we met with Mr. Fainbarg with the purpose of buying the property, and the things that I can tell you freely is the price and the down payment and—
 

 "Def. Attt. I move to strike that, your Honor, as non-responsive.
 

 ‘ ‘
 
 The Court. All right, that is not responsive. I guess the answer was that he didn’t remember what was specifically stated.
 

 “Def. Attt. Counsel, you have a copy of Mr. Welle’s deposition?
 

 “Mr. Boston. Yes.
 

 “Def. Attt. Would you like to give the Court a copy?
 

 “Mr. Boston. Yes.
 

 “Def. Attt. I will be referring, your Honor to page 14, starting at Line 6. . . .
 

 “I refer you to my question here:
 

 “ ‘Q. You indicated there was some discussion or statement, question about an option, and that Mr. Fainbarg stated something about that. X am interested in knowing what Mr. Fainbarg stated, first of all, and then your response to it. ’
 

 “And you answer, would you please read it?
 

 “ ‘A. He said, I guess the gist of it was that we had a 90-day option to purchase the land. ’
 

 “Q. Does that refresh your recollection about what took place ?
 

 “A. No.”