T.C. Memo. 1995-579


UNITED STATES TAX COURT


JAMES T. AND GOLDIE L. RYAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 14073-93, 23885-94.    Filed December 5, 1995.


<u>Karey A. Schoenfeld</u>, for petitioners.

<u>Brenda M. Fitzgerald</u>, for respondent.


MEMORANDUM OPINION


COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax of $12,925 for 1989 and $13,294
for 1991.

The sole issue for decision is whether petitioners may defer
the gain realized on the sale of their old principal residence

under section 1034. We hold that they may not. In so holding, we conclude that petitioners failed to establish that they sold their old residence less than 2 years after they bought their new residence.

The parties agree that, if petitioners must recognize gain on the sale of the old residence, respondent erred in determining a deficiency for 1989 and petitioners must recognize gain in 1991, the year they sold it.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The facts have been fully stipulated under Rule 122 and are so found.

A. Petitioners

Petitioners resided in Clackamas, Oregon, when they filed the petition in this case.

In 1988, petitioners owned a home at 740 Fifth Avenue, Blue Lake, California (the Blue Lake residence, or Blue Lake property). The Blue Lake property was petitioners' principal residence until August 5, 1988. Petitioners had mortgages on the Blue Lake property with Home Federal Bank in San Diego, California, and Beneficial Finance in Eureka, California.

B.    Petitioners' Purchase of the Portland Residence

Petitioners bought a residence at 11425 S.E. Westgate Way, Portland, Oregon (Portland residence), on July 19, 1989.

C.    Petitioners' Sale of the Blue Lake Residence

1.    The Earnest Money Agreement

On August 5, 1988, Robert and Jacqueline Soper (the Sopers) leased the Blue Lake property from petitioners.  On May 29, 1989, petitioners and the Sopers signed an earnest money agreement under which they agreed to transfer the ownership of the Blue Lake property for $85,000.  The Sopers paid $500 earnest money to petitioners for the planned purchase under the agreement.  In the earnest money agreement, the Sopers agreed to make a good faith effort to arrange financing for their purchase of the house within a reasonable time, including applying for an FHA loan. If the Sopers could not obtain an FHA loan, petitioners agreed to arrange financing for the house for 1 year.  After that time, the Sopers were required to have arranged financing for the continued mortgage.  Petitioners were ready and willing to sell the Blue Lake property after May 29, 1989.  The Sopers intended to buy the Blue Lake property at all times after May 29, 1989.

2.    The Option Agreement

On October 30, 1989, the title to the Blue Lake property was held in escrow by the Eureka Title Co.  Because of financing

problems, the Sopers could not pay the full price for the property. On October 30, 1989, the Sopers agreed to pay petitioners $10,000 for an option to buy the Blue Lake property (the option agreement). The $10,000 payment was creditable toward the sale price; it was not refundable if the Sopers did not buy the Blue Lake residence. Thereafter, the Sopers landscaped the exterior, installed a dog run, and redecorated the interior of the house by doing such things as hanging wallpaper. Under the option agreement, the Sopers were responsible for all maintenance on the house. Petitioners did not make or pay for any repairs on the Blue Lake property after October 30, 1989. The Sopers agreed to obtain liability insurance for the residence. After November 1, 1989, the Sopers made petitioners' mortgage payments on the Blue Lake property to Home Federal Bank and Beneficial Finance. The payments to Home Federal Bank included reserves for all property taxes and liability insurance on the property. The Home Federal Bank mortgage required petitioners to maintain liability insurance on the Blue Lake property. Petitioners agreed to maintain fire insurance on the residence. The Sopers obtained renter's insurance for the Blue Lake property. They did not obtain title or hazard insurance for the property.

The option agreement did not require the Sopers to buy the Blue Lake residence. The Sopers could exercise the option by notifying petitioners in writing at any time before June 8, 1991, the end of the lease term. Petitioners and the Sopers intended that title to the Blue Lake property would be held in escrow until the Sopers exercised the option, and that the escrow would close before July 8, 1991.

The Sopers made a security deposit of $1,250 when they rented the Blue Lake property. Under the option agreement, petitioners credited that amount to the purchase price of the property. As of October 30, 1989, the Sopers had paid to petitioners $11,750 ($10,000 under the option agreement, $1,250 in security deposit, and $500 earnest money), which petitioners later applied to the purchase price of the Blue Lake property. If the Sopers did not buy the Blue Lake residence, $10,500 was nonrefundable; this amount is 12.35 percent of the total price. In addition, some or all of the security deposit was refundable when and if the Sopers vacated the property.

On June 22, 1991, the Sopers and petitioners amended the option agreement to delete the provision which required the Sopers' mortgage payments to be applied to the purchase price, and to delete the provision which required the amount of interest that would accrue on the principal amount of $20,000 to be

credited to petitioners from the date of the agreement until the end of the lease. The Sopers' mortgage payments were not applied to the purchase price when they bought the Blue Lake property.

### 3. Passage of Title to the Blue Lake Property

For financial reasons, the Sopers could not complete the purchase of the Blue Lake property until August 5, 1991. On August 5, 1991, Eureka Title Co. closed the escrow of the Blue Lake property. Around that time, the Sopers paid $1,900 for a new roof and $2,404 for pest and damage repairs.

Petitioners had about $30,000 equity in the Blue Lake property when they sold it.

### D. Petitioners' Tax Returns

Petitioners' accountant told them they should report the mortgage payments made by the Sopers as rental income and deduct the payment of property taxes and liability insurance as rental expenses. Petitioners reported rental income from the Blue Lake property on their 1989, 1990, and 1991 income tax returns.

### Discussion

The issue for decision is whether the gain realized by petitioners in 1989 from the sale of the Blue Lake property qualifies for nonrecognition under section 1034. Generally, a taxpayer must recognize gain on the sale of a personal residence.

Sec. 1001(c). However, if a taxpayer sells his or her principal residence, and within 2 years of the date of the sale buys and uses another principal residence, gain from the sale is recognized only to the extent that the taxpayer's adjusted sale price for the old residence exceeds the cost of the new residence. Sec. 1034(a). The parties dispute whether petitioners sold the Blue Lake property within 2 years of July 19, 1989, the date that petitioners bought their Portland residence.

A. When Petitioners Sold the Blue Lake Property for Purposes of Section 1034

Whether a sale is complete for Federal tax purposes depends on all the facts and circumstances. Derr v. Commissioner, 77 T.C. 708, 724 (1981); Baird v. Commissioner, 68 T.C. 115, 124 (1977); Clodfelter v. Commissioner, 48 T.C. 694, 700-701 (1967), affd. 426 F.2d 1391 (9th Cir. 1970). We consider the following factors in deciding whether a sale occurred: (a) Whether the seller transferred legal title; (b) whether the benefits and burdens of ownership passed to the buyer; (c) whether the owner had a right under the agreement to require the other party to buy the property; and (d) how the parties treated the transaction. Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237-1238 (1981); Derr v. Commissioner, supra at 724; Baird v. Commissioner, supra at 124; Merrill v. Commissioner, 40 T.C. 66,

74 (1963), affd. per curiam 336 F.2d 771 (9th Cir. 1964); Haggard v. Commissioner, 24 T.C. 1124, 1129 (1955), affd. 241 F.2d 288 (9th Cir. 1956). We next consider each of these factors.

1.  Title Passage to the Sopers

Passage of title is normally the most important factor. Baertschi v. Commissioner, 412 F.2d 494, 498 (6th Cir. 1969), revg. and remanding 49 T.C. 289 (1967). Title to the Blue Lake property passed to the Sopers on August 5, 1991, more than 2 years after petitioners bought their new residence.

2.  Whether the Benefits and Burdens of Ownership Passed
    to the Sopers

Petitioners argue that they transferred the benefits and burdens of ownership of the Blue Lake property to the Sopers on or before July 19, 1991.

To decide whether the Sopers acquired the benefits and burdens of ownership in the Blue Lake property, we consider whether the Sopers: (a) Bore the risk of loss of the property from all causes; (b) were obligated to pay all taxes, assessments, and charges against the property; (c) had the duty to maintain the property; (d) were responsible for insuring the property; (e) had the right to possess the property and to enjoy the use, rents, and profits thereof; (f) had the right to improve the property without the sellers' consent; and (g) had the right

to obtain legal title at any time by paying the balance of the full purchase price.

The principal burdens of ownership the option agreement shifted from petitioners to the Sopers were the burdens of maintaining the property and paying property taxes. The agreement is silent as to who bore the risk of loss of the Blue Lake residence. The agreement required petitioners to maintain fire insurance on the residence. The Sopers did not obtain title or hazard insurance for the property. We conclude that petitioners bore the risk of loss to the property.

The Sopers were in possession of the Blue Lake residence when they signed the option agreement. This was a continuation of their leasehold, which the Sopers had under the August 5, 1988, lease agreement. Thus, the benefit of possession did not pass to the Sopers under the option agreement. The agreement is silent as to whether the Sopers could make improvements to the Blue Lake property without petitioners' consent. After petitioners and the Sopers signed the option agreement, the Sopers could obtain legal title at any time by paying the outstanding balance.

In summary, the Sopers did not: (a) Bear the risk of loss of the property; (b) have the obligation to pay assessments and charges against the property; or (c) have the responsibility

to insure the property against fire or other hazards.[1]  Although the Sopers made some improvements, e.g., landscaping and new wallpaper, they did not have the right to improve the property without petitioners' consent.  The Sopers: (a) Had the duty to maintain the property; (b) had the right to obtain legal title upon payment of the full purchase price; and (c) had the duty to pay property taxes.  The Sopers had possession of the Blue Lake property under the 1988 lease.  Petitioners contend that this was a benefit of ownership the Sopers enjoyed before title passed. However, the Sopers obtained possession independent of the option agreement.  Even if we treat the Sopers' possession of the Blue Lake property under the lease as a benefit of ownership for purposes of deciding whether a sale had occurred, an insufficient range of benefits and burdens of ownership passed to the Sopers before title passed on August 5, 1991, for us to find that the date of sale preceded that date.  We conclude that the Blue Lake property was sold to the Sopers on August 5, 1991.

Petitioners rely on Baertschi v. Commissioner, 412 F.2d 494 (6th Cir. 1969), to support their position that the sale date is determined by the date the benefits and burdens of ownership passed to the Sopers.  In Baertschi v. Commissioner, supra, the

---

[1] The Sopers did pay for liability insurance through their mortgage payments to Home Federal Bank.

taxpayers/sellers of a residence argued that the date of sale was the date they delivered the deed to the buyers.  Before the sellers delivered the deed, the buyers had signed a land contract, paid 29 percent of the purchase price, assumed responsibility for taxes and insurance, and had the right to improve the property without the sellers' consent and to receive title on payment of the full purchase price.  Id. at 498.  The sellers did not have the right to receive full payment if the buyers defaulted.  Id. at 497.  The Court of Appeals for the Sixth Circuit held that the sale of the residence was complete when the benefits and burdens of ownership passed to the buyers, rather than on the later date when the taxpayers delivered the deed and received full payment of the purchase price.  Id. at 498.

Petitioners' reliance on Baertschi is misplaced for several reasons.  First, the parties there signed a land contract, which was not considered by the purchasers to be an option agreement. Id. at 496.  Under a land sale contract, the seller holds title to the property as security for the payment by the buyer of the remaining purchase price.  Cal. Civ. Code sec. 2985 (West 1993).[2]

_____

[2] Cal. Civ. Code sec. 2985 (West 1993) defines a land sale contract as:  "an agreement wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and which does
(continued...)

Second, the court held that a sale occurred because the benefits and burdens of ownership passed under the contract.  As discussed above, petitioners did not pass sufficient benefits and burdens of ownership to the Sopers under the option agreement to constitute a complete sale until August 5, 1991.  Third, the Court of Appeals in Baertschi reasoned that the sellers were not entitled to section 1034 deferral because "income tax provisions which exempt taxpayers under given circumstances from paying taxes (or as here, postponing them) are strictly construed." Baertschi v. Commissioner, supra at 498-499.  The circumstances here are, from petitioners' standpoint, at best ambiguous. Strict construction of the statutory requirement that petitioners sell the Blue Lake property within 2 years of July 19, 1991, requires us to conclude that they did not meet that requirement.

   3.   Whether Petitioners Could Compel the Sopers To
        Exercise the Option

     Petitioners rely on Awalt v. Commissioner, T.C. Memo. 1987-42, to support their position that we should treat the option agreement as a sale.  In Awalt v. Commissioner, supra, the taxpayer did not qualify for section 1034 treatment because the sale of his residence in Hawaii occurred in 1972 when he received

_____

     [2](...continued)
not require conveyance of title within one year from the date of formation of the contract."

the first payment and significant benefits and burdens of
ownership shifted from him to the buyer, rather than in 1980 when
he received the final payment. The taxpayer delayed the transfer
of title to secure payment of the purchase price.[3] We found that,
under the contract, the parties intended to shift the benefits
and burdens of ownership in 1972. The buyer was liable for the
full purchase price if he defaulted. In contrast, the Sopers
were not obliged to exercise the option or otherwise liable to
pay the full purchase price if they chose not to exercise the
option.

Under California law, an instrument is a contract of sale if
the optionee has an obligation to buy which the owner can enforce
by specific performance. Welk v. Fainbarg, 255 Cal. App. 2d 269,
63 Cal. Rptr. 127, 132-133 (1967). Here, the option agreement
did not provide that petitioners could enforce it by specific
performance. The Sopers believed the agreement was an option
agreement. The fact that petitioners and the Sopers expected
that the Sopers would exercise the option does not change the
fact that it was an option. At some time (not disclosed in the
record) on or around August 5, 1991, the Sopers exercised the

---

[3] Under Hawaii law, an "agreement of sale" is a contract
which lets the seller keep title to property as a means of
securing the purchase price. Awalt v. Commissioner, T.C.
Memo. 1987-42.

option and bought the Blue Lake residence.  Until the Sopers exercised the option, their payments of petitioners' mortgage (including property taxes and liability insurance) were rent payments on the leasehold.  They were not installment payments under an installment land sale contract.  We conclude that the option agreement was not an enforceable land sale contract.

4.   Intent of the Parties

Petitioners contend that the option agreement should be treated as a sale contract because the Sopers paid a large amount for the option.  Williams v. Commissioner, 1 F.3d 502 (7th Cir. 1993), affg. 94 T.C. 464 (1990) and T.C. Memo. 1992-269.  In Williams, the parties signed an option contract, under which the buyers paid $60,000 (12 percent of the purchase price) for the right to buy property, and the seller waived any right to seek specific performance or damages if the buyers defaulted.  The Court of Appeals for the Seventh Circuit held that the possible forfeiture of 12 percent of the purchase price did not convert the option into a sale.  That court stated that "It is true that as the amount to be forfeited creeps toward the purchase price of the house, a point is reached at which the sale is not of the call but of the house".  Id. at 507.  Petitioners' reliance on Williams is misplaced because we do not view their circumstances, where the Sopers paid a nonrefundable 12.35 percent of the

purchase price,[4] as materially different from the 12 percent in <u>Williams</u>. We see no grounds for treating petitioners' and the Sopers' option agreement as anything other than an option agreement.

B.    <u>Whether It Is Significant That the Sopers Occupied the Blue Lake Property Before Title Passed to Them</u>

Respondent argues in the alternative that petitioners' sale of the Blue Lake property is ineligible for section 1034 because they leased it to the Sopers before the Sopers bought it. We need not decide this issue because we hold that petitioners sold the Blue Lake property more than 2 years after they bought their Portland residence.

C.    <u>Conclusion</u>

We conclude that, for purposes of section 1034, petitioners sold the Blue Lake property to the Sopers on August 5, 1991. They may not defer gain realized from the sale under section 1034

---

[4] If we treat the Sopers' $1,250 security deposit as nonrefundable, they paid 13.82 percent of the purchase price. That percentage is not materially different from that in <u>Williams v. Commissioner</u>, 1 F.3d 502 (7th Cir. 1993), affg. 94 T.C. 464 (1990) and T.C. Memo. 1992-269. Cf. <u>Spyglass Partners v. Commissioner</u>, T.C. Memo. 1995-452 (purchase agreements were enforceable obligations and not options; despite relatively small downpayment, benefits and burdens passed to buyers in December 1983 when they had right to possess property, had obligation to pay pro rata share of property tax, and bore risk of loss of property).

because they had bought the Portland home more than 2 years before on July 19, 1989.

Decisions will be entered under Rule 155.