T.C. Memo. 1998-211


UNITED STATES TAX COURT


PAUL L. BLANTON AND CYNTHIA D. BLUE-BLANTON, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22687-96.                    Filed June 16, 1998.


Maris Baltins, for petitioners.

Gregory M. Hahn, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioners' 1992 Federal income tax of $27,898 and an addition to tax of $6,974 under section 6651(a)(1) for failure to file timely.

After concessions, the issues for decision are:

1. Whether petitioners may exclude $125,000 of the gain from the sale of their principal residence in 1992 under section 121. We hold that they may not.

2. Whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to file timely their 1992 income tax return. We hold that they are.

Unless otherwise indicated, section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

A. Petitioners

Petitioners lived in Spokane, Washington, when they filed the petition in this case.

Petitioner Paul L. Blanton (Mr. Blanton) was born on March 4, 1930, and was 62 years old on October 30, 1992. In 1989, petitioners had one son, Terrence, who was 2 years old.

Mr. Blanton taught at the University of Idaho in Moscow, Idaho, from 1957 until he retired in 1990. In 1989, he was the dean of the College of Arts and Architecture. He stepped down as dean in September 1989. He commuted from Spokane, Washington, to teach one course at the University from September 1989 to sometime in 1990.

In 1989 and 1990, Mrs. Blanton was an associate professor of interior planning and design in the Department of Architecture at the University of Idaho in Moscow.

Petitioners lived at 605 Moore Street in Moscow until August 1989. Around January 1, 1989, petitioners rented an office at 106 E. Third in Moscow (E. Third property). Petitioners occasionally spent the night at the E. Third property.

B.  Petitioners' Purchase and Sale of the Spokane Property

1.  Purchase Agreement

On March 20, 1989, petitioners signed a residential real estate purchase and sale agreement (purchase agreement) to buy a residence at 529 W. 22d, Spokane, Washington (W. 22d property) for $180,000 from Michael W. Hagan (Hagan). Petitioners paid Hagan a $5,000 deposit for the W. 22d property.

The purchase agreement stated that petitioners could take possession of the W. 22d property at closing, which the agreement defined as the date on which all documents are recorded and the sale proceeds are available to the seller.

The purchase agreement stated that closing would occur by June 19, 1989. On June 17, 1989, petitioners paid Hagan a second $5,000 deposit to extend their purchase agreement for 60 days because Hagan could not convey legal title (for reasons discussed below at paragraph B-3) to the W. 22d property by June 19.

The purchase agreement stated that it was contingent on Hagan's conveying clear title to the W. 22d property to petitioners, and that if Hagan could not do so, the agreement would be void and Hagan would return petitioners' deposit.

The purchase agreement stated that Hagan had never lived in the house and that he made no warranties as to the condition of the house or whether it was habitable, or in compliance with code or laws.

2. Petitioners' Move to Spokane

Petitioners rented moving equipment from U-Haul several times in July 1989 to move some of their furniture and personal belongings to the W. 22d property. Petitioners sold their home in Moscow on August 4, 1989, for $150,000. Around that time, petitioners and their son moved from Moscow to the W. 22d property. Petitioners took possession of the W. 22d property by early August 1989. Petitioners did not have a residence in Moscow after August 4, 1989.

The W. 22d property needed a lot of work when petitioners moved into it. Petitioners were responsible for maintaining the W. 22d property after they moved in. They made various repairs to the property in July and August 1989.

3. Title Dispute Over the Spokane Property

Shortly after signing the purchase agreement, petitioners learned that Hagan could not deliver clear title by the closing date (June 19, 1989) because a third party, Riner E. Deglow (Deglow), claimed that his chapter 7 bankruptcy estate possessed an interest in the W. 22d property.

On November 30, 1989, petitioners, Hagan, and Deglow's chapter 7 trustee in the bankruptcy proceeding, Joseph A.

Esposito (Esposito), filed with the Bankruptcy Court for the Eastern District of Washington a motion to authorize the trustee to sell the W. 22d property (motion to sell). On December 15, 1989, Deglow objected to the motion to sell.

On December 22, 1989, the bankruptcy court decided that the W. 22d property was the property of Deglow's bankruptcy estate and ordered that the trustee and Hagan sell the residence to petitioners for $180,000. Petitioners spent $10,000 in legal fees to resolve the title dispute over the W. 22d property.

4. Passage of Title to the W. 22d property

On January 25 and 26, 1990, Hagan, and Esposito as trustee for Deglow's bankruptcy estate, conveyed title to the W. 22d property to petitioners by quitclaim deed. Petitioners financed $144,000 of the purchase price through Mountain West Savings Bank (Mountain West). Mountain West disbursed the $144,000 loan on January 30, 1990.

On January 31, 1990, escrow closed on the W. 22d property. Petitioners obtained legal title to the W. 22d property on January 31, 1990. At settlement, Hagan applied petitioners' $10,000 deposit to the purchase price.

Petitioners made the first mortgage payment on the W. 22d property on March 1, 1990. Petitioners did not pay rent or other compensation to Hagan to live in the W. 22d property from when the purchase agreement was executed on March 20, 1989, until escrow closed on January 31, 1990.

5.  Taxes on the W. 22d Property

Hagan paid the delinquent county taxes on the W. 22d property for 1987, 1988, and 1989.  Petitioners paid the county taxes on the W. 22d property for January 1990 at settlement.

6.  Petitioners' Improvements to and Sale of the W. 22d Property

In 1989, Mr. Blanton spent a substantial amount of time creating architectural drawings for the renovation of the W. 22d property.  Petitioners did not begin to make substantial renovations until 1990.  Petitioners kept detailed records of their improvements to the W. 22d property in 1990, 1991, and 1992.  Petitioners spent $42,225.46 in 1990, $63,838.02 in 1991, and $9,730.49 in 1992 to renovate the W. 22d property.  Petitioners included the amounts they paid in 1990, 1991, and 1992 to renovate the W. 22d property in their cost basis in the Spokane property.  Petitioners did not include any amounts they paid in 1989 in their cost basis in the Spokane property.

Petitioners lived in the W. 22d property until they sold it on October 30, 1992, for $485,000.  They incurred selling expenses of $38,825.  Their cost basis in the W. 22d property was $302,302.  They realized gain of $143,873 on its sale, calculated as follows:

```
Sale price of W. 22d property           $485,000
Less adjusted cost of W. 22d property    302,302
Less expenses of sale                     38,825
Gain on sale of W. 22d property          143,873
```

On December 15, 1992, petitioners bought a new residence at 3620 Jefferson Drive, Spokane, Washington (Jefferson property), for $361,678.

## C.   Petitioners' Credit Applications

On June 2, 1989, petitioners submitted a residential loan application.  On the line marked "present address" petitioners typed: "106 E. 3rd Suite 1".  On the line for "No. Years" at their present address they typed "6 mth".

On February 13, 1990, petitioners submitted a loan application to Rainier Bank.  On it, petitioners listed the W. 22d property as their home address, and wrote "1990" in the box marked "YRS & MOS THERE".

Petitioners submitted a credit application dated March 15, 1991, to Security Pacific Bank.  On it, they listed as their residence address the W. 22d property, and wrote "1 year" in the box marked "YRS & MOS THERE".

## D.   Petitioners' 1992 Income Tax Return

Friends of petitioners recommended an accountant in Spokane, Joseph Schmitz (Schmitz), to them.  Schmitz told petitioners that he had obtained extensions to file their 1992 return. Petitioners' 1992 return was due October 15, 1993.

Schmitz prepared petitioners' 1992 income tax return. Petitioners filed it on July 25, 1994.  Schmitz attached Form 2119, Sale of Your Home, to petitioners' 1992 return.  On the Form 2119, Schmitz checked a box to indicate that petitioners had

not owned and used the W. 22d property as their principal residence for at least 3 years.

OPINION

A. Whether Petitioners Had Owned and Used the W. 22d Property for 3 Years

The issue for decision is whether $125,000 of the gain petitioners realized in 1992 from the sale of their W. 22d property is excludable under section 121. Generally, a taxpayer must recognize gain on the sale of a personal residence. However, during the year in issue, taxpayers 55 and older could exclude from gross income up to $125,000 of gain from the sale of property which they had owned and used as their principal residence for 3 or more of the 5 years immediately before the sale. Sec. 121(a) and (b).[1] The term "principal residence" in section 121 has the same meaning as in section 1034 and the regulations thereunder. Sec. 1.121-3(a), Income Tax Regs.

The parties dispute whether petitioners had owned and used the W. 22d property for 3 years when they sold it in 1992.

_____

[1] Sec. 121(a) provides as follows:

SEC. 121(a) General Rule--At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if--

(1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and

(2) during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.

Petitioners bear the burden of proving that they meet the requirements of section 121.  Rule 142(a).

B.    Use of the W. 22d property

Generally, whether property is used as a principal residence depends on the facts and circumstances.  Sec. 1.1034-1(c)(3)(i), Income Tax Regs.  Petitioners submitted loan applications in 1990 and 1991 in which they stated how long they had lived at the W. 22d property.  The information on both forms is ambiguous, but it tends to suggest they first occupied it in 1990.  Despite this, there is more persuasive evidence that petitioners moved into the W. 22d property by early August 1989 and lived there until they sold it on October 30, 1992.  Therefore, we find that petitioners used the W. 22d property for more than 3 years.  However, as discussed next, to qualify for the exclusion under section 121, petitioners must also have owned the W. 22d property for more than 3 years.

C.    Ownership of the W. 22d Property

When a sale is complete for Federal tax purposes depends on all the facts and circumstances; no single factor controls.  Derr v. Commissioner, 77 T.C. 708, 724 (1981); Baird v. Commissioner, 68 T.C. 115, 124 (1977).  A sale of real property is generally complete upon the earlier of the transfer of legal title or the assumption of the benefits and burdens of ownership by the buyer. Dettmers v. Commissioner, 430 F.2d 1019, 1023 (6th Cir. 1970), affg. 51 T.C. 290 (1968); Derr v. Commissioner, supra; Baird v. Commissioner, supra.

1.  When the Benefits and Burdens of Ownership Passed
    to the Blantons

Petitioners argue that they acquired the benefits and burdens of ownership of the W. 22d property around August 1989. To decide their claim, we consider whether they:  (a) Had the right to possess the property and to enjoy the use, rents, and profits thereof; (b) had the duty to maintain the property; (c) were responsible for insuring the property; (d) bore the risk of loss of the property; (e) were obligated to pay taxes, assessments, and charges against the property; (f) had the right to improve the property without the seller's consent; and (g) had the right to obtain legal title at any time by paying the balance of the purchase price.  Derr v. Commissioner, supra at 724-725; Ryan v. Commissioner, T.C. Memo. 1995-579.

The purchase agreement did not state that it shifted any of the benefits and burdens of ownership to petitioners. Nevertheless, petitioners argue that they had the right to possess the W. 22d property, they bore the burden of maintaining the property, and they had the right to obtain legal title at anytime by paying the balance of the purchase price.

a.  Whether Petitioners Had a Right To Possess the
    Residence and Enjoy the Use, Rents, and Profits
    Thereof

Petitioners moved into the W. 22d property by August 4, 1989.  Petitioners apparently had the right to possess and use the W. 22d property before closing because Hagan gave them

permission to do so.[2]  However, petitioners did not claim that they had the right to rent the W. 22d property to anyone else.

   b. <u>Whether Petitioners Had a Duty To Maintain the Residence</u>

  Mr. Blanton testified that petitioners understood that they were responsible for the W. 22d property once they moved into it in July 1989.  In the purchase agreement, Hagan made no warranties as to the condition of the house or whether it was habitable or in compliance with code or laws.  We infer from this that Hagan did not have a duty to maintain the residence after petitioners signed the purchase agreement, and that petitioners had the duty to maintain the residence after they took possession of it.

   c. <u>Whether Petitioners Were Responsible for Insuring the Property</u>

  The record contains no evidence that petitioners provided or were responsible for providing insurance on the W. 22d property before escrow closed on January 31, 1990.  Petitioners do not contend that they were responsible for insuring the W. 22d property before that date.

   d. <u>Whether Petitioners Bore the Risk of Loss</u>

  Petitioners do not contend that they bore the risk of loss for the W. 22d property before title passed.  Under Washington State law, the right to possess does not necessarily include the

---

[2] We note, however, that it is not clear whether Hagan, whose own title was clouded by Deglow's ownership claim, had authority to vest petitioners with possession.

risk of loss.  <u>Voorde Poorte v. Evans</u>, 832 P.2d 105 (Wash. Ct. App. 1992) (contention that the risk of loss follows possession has a certain equitable appeal but is against the weight of authority).

        e.    <u>Whether Petitioners Were Obligated To Pay Taxes, Assessments, and Charges</u>

Hagan, not petitioners, paid the property taxes on the W. 22d property before settlement.  Petitioners do not contend that they were obligated to pay taxes, assessments, and charges for the W. 22d property.

        f.    <u>Whether Petitioners Had the Right To Improve the Property Without the Seller's Consent</u>

The agreement is silent as to whether petitioners had the right to improve the W. 22d property without Hagan's consent. Mr. Blanton testified that petitioners had the right to and did improve the property in 1989.  We accept Mr. Blanton's testimony on this point.  However, petitioners spent far less to improve the house in 1989 than in 1990 and later.  It appears that they made urgent repairs needed to inhabit the house but delayed anything more until 1990.  On this record, it is unclear whether petitioners had an unlimited right to improve the W. 22d property in 1989.

        g.    <u>Whether Petitioners Had the Right To Obtain Legal Title Any Time by Paying the Balance of the Purchase Price</u>

Petitioners did not have the right to obtain legal title to the Spokane property at any time before settlement on January 31, 1990.  Hagan could not pass clear title until the Bankruptcy

Court resolved Deglow's claim to title. Since this occurred in late December 1989, title could not pass before then.

h.   Conclusion

In summary, petitioners had: (a) The right to possess and use the W. 22d property, but not the right to rent it to others; (b) the duty to maintain the property; and (c) a limited right to improve the property without Hagan's consent. Petitioners did not: (a) Bear the risk of loss of the property; (b) have the obligation to pay taxes on the property; (c) have the responsibility to insure the property against fire or other hazards; or (d) have the right to obtain legal title at any time by paying the balance of the purchase price. We conclude that petitioners did not have enough of the benefits and burdens of ownership of the W. 22d property to be treated as owning it for purposes of section 121 before title passed.

2.   Title Passage to the Blantons

Title to the W. 22d property passed to the Blantons on January 31, 1990, less than 3 years before they sold it on October 30, 1992. Passage of title is perhaps the most important indicator of the date of sale of property. Commissioner v. Baertschi, 412 F.2d 494, 498 (6th Cir. 1969), revg. and remanding 49 T.C. 289 (1967).

Petitioners contend that the date of the passage of title is less important here than in the usual case because passage of title was delayed by a title dispute. In light of our conclusion that petitioners did not have the benefits and burdens of

ownership before title passed, they would not prevail here even if we gave little weight to the date of title passage.

Petitioners rely on Merrill v. Commissioner, 40 T.C. 66, 74 (1963), affd. per curiam 336 F.2d 771 (9th Cir. 1964), for the proposition that intent to transfer title is particularly important if transfer of title is delayed by circumstances beyond the control of the buyer and seller. In Merrill v. Commissioner, supra, we held that a sale was completed even though title to the property could not pass until several months later, a title insurance policy had not been issued, and the balance of the purchase price was to be paid at a future date. Id. at 74-77.

Petitioners' reliance on Merrill is misplaced. We stated in Merrill that the intent of the parties as to when the benefits and burdens of ownership of the property are to be transferred will control where passage of title is delayed to secure payment of the purchase price or for an escrow arrangement. Id. at 74. The buyer in Merrill had assumed almost all the benefits and burdens of ownership. However, we are not convinced that the parties to the transaction at issue intended the benefits and burdens to pass to petitioners before title passed, and as discussed above, petitioners did not have the benefits and burdens of ownership before title passed to them.

### 3. Petitioners' 1992 Tax Return

Petitioners checked the box on their 1992 income tax return indicating that they had not owned and used the Spokane property

for 3 years.  Petitioners contend that Schmitz erroneously checked that box.  Petitioners did not call Schmitz to explain why he checked the box indicating that petitioners had not owned and used the W. 22d property for 3 years.  Petitioners did not explain why they did not immediately correct the return when they noticed what Schmitz had done.  Although this is not compelling evidence in isolation, it adds some weight to the other evidence that petitioners had not owned and used the Spokane property for 3 years when they sold it in 1992.  See Bank of the West v. Commissioner, 93 T.C. 462, 468 (1989); Kenyatta Corp. v. Commissioner, 86 T.C. 171, 182 (1986), affd. per order 812 F.2d 577 (9th Cir. 1987); McShain v. Commissioner, 71 T.C. 998, 1010 (1979).

4.  Conclusion

Income tax provisions which exempt taxpayers under given circumstances from paying taxes or permit them to postpone taxes are strictly construed.  Commissioner v. Baertschi, supra at 498-499 (the taxpayer/sellers were not entitled to section 1034 deferral).  We conclude that petitioners did not meet the statutory requirement that they own and use the Spokane property for 3 years.

A taxpayer seeking to exclude gain on the sale of property must own and use that property as his or her principal residence for 3 years or more.  Sec. 121(a)(2).  Petitioners used the W. 22d property for more than 3 years.  However, they did not bear enough of the benefits and burdens of ownership before title

passed on January 31, 1990, for us to find that their ownership preceded that date. Thus, petitioners do not qualify under section 121(a)(2).

B.  Whether Petitioners Are Liable for the Addition to Tax Under Section 6651(a)(1) for Failure To File Timely

Section 6651(a)(1) imposes an addition to tax of up to 25 percent for failure to file timely Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985). To prove "reasonable cause", a taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners' 1992 return was due October 15, 1993. Petitioners filed their 1992 return on July 25, 1994.

Petitioners argue that they had reasonable cause to file their 1992 return late because they thought that Schmitz had requested an extension of time to file. A failure to file is due to reasonable cause if the taxpayers exercised ordinary business care, but could not, nevertheless, file their return by the deadline prescribed by law. United States v. Boyle, supra at 246; Bank of the West v. Commissioner, supra at 471.

Mr. Blanton testified that Schmitz told him that requests for extensions had been filed. Two extensions were filed regarding petitioners' 1992 return which extended the due date to

October 15, 1993.  Mr. Blanton did not testify that Schmitz told them they had an additional extension of time to file their 1992 return beyond the October 15, 1993, due date, call Schmitz to testify, or provide any correspondence from Schmitz corroborating his testimony.

Petitioners did not have reasonable cause for filing their 1992 return more than 9 months after their extensions expired. Thus, they are liable for the addition to tax under section 6651(a)(1).

To reflect the foregoing,

Decision will be entered for respondent.