[Civ. No. 1028.    Fifth Dist.    Mar. 20, 1969.]

OLIVER TORLAI, Plaintiff and Respondent, v. BO W. LEE et al., Defendants and Appellants.

Lee & Hertzer for Defendants and Appellants.

Daley, Patridge & Garrett, Daley, Brewer, Patridge & Garrett and James M. Garrett for Plaintiff and Respondent.

GARGANO, J.—Appellants Bo W. Lee and Kam Lan Lee appeal from a judgment of the court below awarding respond-

ent a real estate commission for an abortive real estate transaction.[1] The undisputed facts are these: Appellants own a hotel in San Joaquin County known as the Basconia Hotel. On Friday, May 13, 1966, Peter Lucchesi, a real estate salesman employed by respondent, telephoned appellant Bo W. Lee to inquire whether he would be willing to sell the hotel. Appellant replied that he would for $85,000. Lucchesi told Lee that he had a buyer who would pay that price. Then the parties discussed the terms of sale.

Later that day Lucchesi met Mr. Lee at his hotel and presented him with a deposit receipt signed by a Mr. Youns Khan, which acknowledged deposit in the broker's trust account of a check in the amount of $2,000. The deposit receipt contained Mr. Khan's proposal to purchase the hotel for $85,000 with a down payment of $15,000 and the balance payable at $500 or more monthly. However, the proposal was conditional, and hence the deposit receipt also contained the following pertinent provision:

"This contract contingent on Buyer's approval of said building upon inspection within two days from date of acceptance by Seller and present lease on forty hotel rooms (payable $275.00 or more monthly) will expire on Feb. 1, 1967 with no option to renew said lease, and Bar lease (paying $300.00 monthly) being effective until Oct. of 1970. If any of the above Terms or Conditions cannot be met all money will be refunded."

Mr. Lee and his wife, Kam Lan Lee, examined the deposit receipt, conversed in Chinese, and requested a correction in the amount of the leases; then Bo W. Lee signed it.

Three days later, on Monday, May 16, 1966, Lucchesi went to appellants' home to communicate the buyer's acceptance. However, he was told by Mr. Lee to see his son, who is a lawyer. Later, at the lawyer's office, Lucchesi was told that the offer was withdrawn.

It is conceded by both sides that this is not a situation in which a real estate broker who had a listing contract to sell real property, and who timely produced a ready, willing and able buyer, was deprived of his commission by his client's arbitrary refusal to consummate the real estate transaction. On the contrary, respondent made the initial contact on

[1]Respondent concedes that the judgment was in error as to appellant Kam Lan Lee, and it should be reversed as to this appellant; Mrs. Lee did not sign the deposit receipt which was the basis for the court's judgment.

behalf of the buyer and admits that he did not have a separate listing contract to sell the Basconia Hotel and that he must look solely to the deposit receipt for the right to a commission (*Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300 [266 P.2d 856]; 1 Miller and Starr, Current Law of California Real Estate, p. 250). Respondent also admits that the deposit receipt which his prospective purchaser signed was not in legal effect an offer to purchase appellants' hotel; it was contingent on Mr. Khan's approval of the building and certain leases within two days after appellants accepted the proposal, and thus was in legal effect a solicitation of an offer. Respondent therefore concedes that when Mr. Lee accepted the conditional proposal by signing the deposit receipt, he merely gave Mr. Khan an option to purchase his hotel which had to be exercised within the time specified to entitle respondent to a commission. In short, after stating that the proposal to purchase the Basconia Hotel was "contingent on buyer's approval of said building upon inspection within two days" and that Mr. Lee agreed to sell the hotel "on the terms and conditions therein set forth" the deposit receipt clearly allows respondent a commission only if its terms and conditions are met.[2] Thus, since the buyer did not approve the building and the leases within two days, and since the second day fell on a Sunday, the only question raised by the parties in this appeal is whether Mr. Khan's option to purchase appellants' hotel falls within the ambit of section 11 of the Civil Code as respondent successfully asserted in the court below. This section provides: "Whenever any act of a secular nature, other than a work of necessity or mercy, is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, it may be performed upon the next business day, with the same effect as if it has been performed upon the day appointed."

Respondent argues that an option to buy real estate is a unilateral contract to sell land, and albeit illusory (since it does not obligate the optionee to buy the land), is nevertheless an exception to the general rule that contracts must be

---

[2]The deposit receipt contained the following provision:

"The undersigned accepts the above offer and agrees to sell the property described thereon on terms and conditions therein set forth.

"The undersigned agrees to pay Broker therein named and employed by the undersigned to sell said property as commission the sum of 6% of Sales Price _____ Dollars ($ _____) or one-half of the amounts paid by Buyer in the event the same is forfeited, provided such one-half shall not exceed the full amount of said commission."

mutual. Accordingly, respondent contends that an option is a contract within the meaning of the term as used in section 11 and can be exercised on the first business day following its expiration date if the expiration date falls on a Sunday or holiday. He therefore concludes that since the critical two-day period for Mr. Khan's approval of the building and leases, as provided by the deposit receipt, expired on Sunday, and since Mr. Lucchesi communicated the buyer's approval on the next business day, the terms and conditions of the deposit receipt were met, and respondent earned his commission.

Respondent's argument is not convincing. It fails to distinguish between an option based on good consideration and an option based on no consideration of any kind. ■ An option based on consideration, whether it be the proverbial peppercorn or some other detriment, is itself a binding contract within the traditional and accepted sense. Moreover, although such an option may not be mutual at the outset, when exercised it assumes the character of a bilateral contract, and is mutually enforceable (*Estate of Fulmer,* 203 Cal. 693 [265 P. 920, 58 A.L.R. 430]; *Auslen* v. *Johnson,* 118 Cal. App.2d 319 [257 P.2d 664]; *Cushing* v. *Levi,* 117 Cal.App. 94 [3 P.2d 958]). In other words, an option based on consideration contemplates two separate contaracts, i.e., the option contract itself, which for something of value gives to the optionee the irrevocable right to buy under specified terms and conditions, and the mutually enforceable agreement to buy and sell into which the option ripens after it is exercised. Manifestly, then, an irrevocable option based on consideration is a contract as defined by Civil Code sections 1549 and 1550. Significantly, our Supreme Court has said that when Civil Code section 11 "speaks of an act to be performed by 'contract' it means contracts such as are defined by sections 1549 and 1550 of the Civil Code itself." (*Cheney* v. *Canfield,* 158 Cal. 342, 348 [111 P. 92, 32 L.R.A. N.S. 16].)

■ On the other hand, an option without consideration is not binding on either party until actually exercised, and is not a contract in the traditional sense, nor is it a contract under section 1550 of the Civil Code. ■ In short, "[i]t is essential to the existence of a contract that there be sufficient cause or consideration, for a promise unsupported by consideration has no binding force. . . ." (12 Cal.Jur.2d, Contracts, § 27, p. 219; Civ. Code, § 1550, subd. 4.) In other words, an option given without any consideration contemplates only one contract, the one which comes into existence

after it is exercised. Thus, until exercised such an option is merely "a continuing offer which may be revoked at any time." (*Kelley* v. *Upshaw,* 39 Cal.2d 179, 191 [246 P.2d 23]; *Thomas* v. *Birch,* 178 Cal. 483 [173 P. 1102]; *Henry* v. *Lake Mill Lbr. Co.,* 139 Cal.App.2d 620 [293 P.2d 909].)

In the instant case, it is clear (and respondent concedes) that Mr. Khan's option, as evidenced by the deposit receipt which Mr. Lee signed, was not based on any consideration. Mr. Khan's $2,000 deposit was also contingent on his approval of the building and the leases; it was deposited in respondent's trust account and was refundable in total if he did not approve. Thus, Mr. Khan's option was merely a continuing offer which expired May 15, 1966, even though it was a Sunday. Consequently, since respondent's buyer did not meet the terms and conditions of the deposit receipt, respondent was not entitled to his commission.

The cases cited by respondent for the proposition that a revocable option based on no consideration is also a contract within the ambit of section 11 of the Civil Code are not in point. Although these cases seemingly refer to all options (with or without consideration) as contracts, they nevertheless are cases in which the options were based on good consideration. Moreover, they do not deal with the question as to whether an option is a contract within the meaning of section 11 of the Civil Code.

The judgment is reversed with directions to the trial court to enter judgment in favor of appellants in accordance with the views expressed herein.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied April 17, 1969, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1969.