[No. B115731. Second Dist., Div. Four. Aug. 27, 1998.]

FIDELITY & DEPOSIT COMPANY OF MARYLAND, Plaintiff and Appellant, v.
CHARTER OAK FIRE INSURANCE COMPANY, Defendant and Respondent.

### COUNSEL

La Follette, Johnson, De Haas, Fesler & Ames, Steven J. Joffe and David J. Ozeran for Plaintiff and Appellant.

Barger & Wolen and Larry M. Golub for Defendant and Respondent.

### OPINION

**EPSTEIN, J.**—Appellant, Fidelity & Deposit Company of Maryland (F&D), seeks contribution and indemnity from three insurance companies, including respondent, Charter Oak Fire Insurance Company (Charter Oak), for money F&D paid in the defense and indemnity of Western Savings & Loan Association (WSLA) entities in the underlying action. The trial court granted Charter Oak's motion for summary judgment. We affirm.

#### FACTUAL AND PROCEDURAL SUMMARY

The Mountain Meadows Patio/Terrace project is a 172-unit townhome development in Pomona, California. According to respondent, WSLA purchased the project in 1984, and the homes were built between 1985 and 1990. The underlying action was brought by Mountain Meadows Patio/Terrace Maintenance Association against several defendants, including Western Property Service Corporation and WSLA doing business as WSLA Development Corporation of California. The complaint alleged five causes of action arising from construction defects in the townhomes: negligence,

breach of implied and express warranties, negligent misrepresentation, strict product liability, and negligence per se. Four insurance companies, including appellant, defended the action. These insurers paid all attorneys' fees, costs, and expenses arising from the defense of WSLA.

F&D issued policy No. SM 69 08 291 effective March 21, 1985, to April 1, 1988, to numerous insureds, including WSLA, Western Properties Service Corporation, and WSLA doing business as WSLA Development Corporation. This policy provided insureds with property and liability coverage for their premises and operations. The F&D policy contained an "Exclusion or Excess Coverage" endorsement which excluded coverage for risks insured under several other policies, including those issued by Charter Oak. The policy issued by appellant had annual premiums of $158,571, $461,276, and $585,220, respectively, for each of the first three years of coverage.

Respondent Charter Oak (erroneously named and sued herein as the Travelers Aetna Insurance Company) issued policy No. 650-503G264-3-COF-86 effective March 21, 1986, to March 21, 1987, to "WESTERN SAVINGS & LOAN ASSOC DBA MARINA INN." The Marina Inn is located in Russellville, Arkansas and was acquired by WSLA through foreclosure. A renewal policy (policy No. 650-503G264-3-COF-87) was effective March 21, 1987, to March 21, 1988. Both policies were issued in Little Rock, Arkansas and provided first party property coverage and third party general liability coverage.

The general declarations pages of the Charter Oak policies specify that the business of the named insured is "MOTEL & RESTAURANT." "MOTEL" is typed in above the space designated for the name and address of the insured. The applicable buildings are listed as (1) "MOTEL" and (2) "OFFICE, RESTAURANT" located at "I-40 & HWY 7, RUSSELLVILLE AR." The mailing address for the named insured is 2901 West Airport, Russellville, Pope County, Arkansas 72701. A typed-in designation specifies that the insured is a "MOTEL," not an individual, partnership, or corporation. The premiums associated with the risk of property damage claims arising from "premises and operations" are $118 and $115, respectively, for the 1986-1987 and 1987-1988 policies. The premiums associated with the risk of property damage claims on "products/completed operations" are $175 and $151 for the two annual policy periods.

Change endorsements to the 1986-1987 Charter Oak policy list the "Named Insured" as "WESTBROOKE INNS MANAGEMENT INC.," "WESTBROOKE INNS MANAGEMENT INC DBA MARINA INN," and "MARINA INN."

Under both Charter Oak policies, "ZENITH MANAGEMENT" is an additional insured with respect to liability arising while acting as a real estate manager for the named insured. "H&S COMPANY" is also designated as an additional insured with respect to the ownership, maintenance or use of land at "I-40 & HWY 7 RUSSELLVILLE, AR" under the two policies.

The Charter Oak policies contain a hotels and motels (operator's risk) endorsement detailing coverage in relation to saddle animals or watercraft, products hazards, and malpractice and professional services. The declarations schedule which "discloses all hazards insured hereunder known to exist at the effective date of this policy" lists the premises and operations as "HOTELS—NOT APARTMENT HOTELS/WITH SWIMMING POOLS OR BATHING BEACHES," "RESTAURANTS/WITH SALE OF ALCOHOLIC BEVERAGES THAT ARE LESS THAN 75% OF THE TOTAL ANNUAL RECEIPTS OF THE RESTAURANT—WITHOUT DANCE FLOOR," AND "BUILDING OR PREMISES—BANK, MERCANTILE, MANUFACTURING OR OFFICE—NOT OCCUPIED BY THE INSURED (LESSOR'S RISK ONLY)."

Tender of the defense of WSLA in the underlying action was made to Charter Oak by Kenneth P. Scholtz, counsel for Resolution Trust Corporation as receiver of WSLA and two of its subsidiaries, WSLA Development Corporation of California and Western Property Service Corporation. According to respondent, Charter Oak issued a preliminary denial on the ground that the policyholder for the subject policy was Marina Inn, not WSLA or any of its subsidiaries. Charter Oak requested additional information from Mr. Scholtz for respondent to properly evaluate the claim. A follow-up letter, repeating the request, was sent by Charter Oak. Respondent submitted a letter from Mr. Scholtz, stating: "I have been advised by my client's insurance administrator that the Marina Inn was a piece of property that was acquired by Western Savings through foreclosure and was thereafter insured under the referenced policy. Therefore, it does appear that the [Charter Oak] policy does not apply to the Mountain Meadows claim." Charter Oak requested confirmation of its understanding that counsel was withdrawing the tender of defense. Mr. Scholtz did not reply. Charter Oak then formally declined the defense and indemnity of WSLA, WSLA Development Corporation, and Western Property Service Corporation because there was no evidence of property damage occurring during the policy period, and none of the defendants in the underlying action were covered under the policy issued to Marina Inn in Russellville, Arkansas.

Appellant filed an action against three insurance companies, including respondent, seeking declaratory relief, contribution, and indemnity. Charter Oak moved for summary judgment.

The trial court granted Charter Oak's motion for summary judgment on the ground that the "four corners" of the Charter Oak policies limited coverage to the Marina Inn motel and restaurant in Russellville, Arkansas. "[T]he caption in the underlying complaint . . . contains the names of three WSLA entities which are named insureds in P's policies . . . WSLA, WSLA Develp. Corp., and Western Property Service Corp., and does not contain the only insured in the [Charter Oak] policies, [WSLA doing business as Marina Inn]."[1] The court ruled that even if WSLA doing business as Marina Inn were not a separate entity, as appellant argues it is, the policies indicated that the insurance only covered WSLA's property in Arkansas. F&D filed a timely notice of appeal.

DISCUSSION

■ Code of Civil Procedure section 437c, subdivision (c) allows the trial court to grant summary judgment if no triable issue exists as to a material fact, and if the papers entitle the moving party to a judgment as a matter of law. The judgment is appealable under subdivision (l) of that section. We apply the standard rules in reviewing a grant of summary judgment. " 'The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [¶] A defendant meets his or her burden on a motion for summary judgment if that party has proved there is a complete defense to the cause of action. (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. [Citations.] [¶] On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal standard as the trial court. [Citations.] ' "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." ' " (*Van Dyke* v. *Dunker & Aced* (1996) 46 Cal.App.4th 446, 450-451 [53 Cal.Rptr.2d 862].)

■ The essence of appellant's argument is that a triable issue of material fact exists as to the scope of the third party general liability coverage provided by the Charter Oak policies.

---

[1]The caption in the *Mountain Meadows* complaint names the following WSLA entities as defendants: "WESTERN SAVINGS AND LOAN ASSOCIATION, an Arizona corporation dba in California as WSLA DEVELOPMENT CORPORATION OF CALIFORNIA" and "WESTERN PROPERTY SERVICE CORPORATION, an Arizona corporation doing business in California as WSLA." The second defendant is referenced in paragraph 10 of the complaint as "WESTERN PROPERTY SERVICES CORPORATION, an Arizona corporation, doing business in California as WSLA DEVELOPMENT CORPORATION OF CALIFORNIA."

■ An insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected. (*Legarra* v. *Federated Mutual Ins. Co.* (1995) 35 Cal.App.4th 1472, 1480 [42 Cal.Rptr.2d 101].) The information in the declarations will control the coverage provided, and the named insured is generally identified in the declarations. If the declarations indicate that the policy does not provide coverage for the defendant in the underlying litigation, no further review of the policy is necessary. (1 Cal. Liability Insurance Practice: Claims and Litigation (Cont.Ed.Bar 1997) §§ 3.10-3.14, pp. 3-15 to 3-16.)

■ Charter Oak presents convincing evidence that coverage under its policies was limited to the risks involved in operation of the Marina Inn. The general declarations pages identify the business of the insured as a motel and restaurant. The applicable buildings are a motel, an office, and a restaurant located at I-40 and highway 7 in Russellville, Arkansas. The policies specifically identify the status of the named insured as a "MOTEL," not an individual, partnership, or corporation. (See *Milazo* v. *Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1536 [274 Cal.Rptr. 632] [where policy states that the named insured is a partnership, partner was not insured in his individual capacity even though both the partnership and its partners were listed as named insureds].) Change endorsements identify a hotel management company as well as the Marina Inn itself as insureds.

Moreover, Charter Oak received modest premiums under these policies. The premiums associated with the risk of property damage liability claims totaled $293 for 1986-1987 and $266 for 1987-1988. The insured's payment of a relatively small premium suggests that Charter Oak provided coverage for the relatively small risks associated with the Marina Inn, not the much larger risks associated with all of WSLA's projects. (See *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 612 [155 Cal.Rptr. 870] [if insured paid relatively small premium, it is not reasonable to expect that insurer intended to create entirely new areas of risk]; *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841] [insurance premiums are commensurate with level of risk covered].) We conclude that, as a matter of law, the policies issued by respondent covered the Marina Inn alone. (See *Pieper* v. *Commercial Underwriters Ins. Co.* (1997) 59 Cal.App.4th 1008, 1016 [69 Cal.Rptr.2d 551] [interpretation of an insurance policy is generally a question of law]; *Regan Roofing Co.* v. *Superior Court* (1994) 24 Cal.App.4th 425, 435 [29 Cal.Rptr.2d 413] ["In the context of insurance contract law, it is well established that a duty to defend is contractual in nature [citation] and determination of such a duty is a matter of law appropriate for summary

adjudication. [Citations.]"].) Charter Oak did not breach its insurance contracts in declining the defense and indemnity of defendants in the underlying action.

Appellant argues that the trial court erred in determining that the designation of a "dba" (doing business as) on the declarations pages of the Charter Oak policies limited coverage to the Marina Inn. F&D contends that there is no legal distinction between the "dba" and the holder of the name, and that use of a fictitious business name through a "dba" does not create a separate legal entity. But respondent does not rely on the "dba" designation alone in maintaining that Charter Oak did not have a duty to defend Western Property Service Corporation or WSLA Development Corporation of California in the *Mountain Meadows* action. Even if the Marina Inn is not a separate entity from WSLA, the Charter Oak policies, when read as a whole, clearly limit coverage to a motel and restaurant in Russellville, Arkansas. The Mountain Meadows Patio/Terrace project in Pomona is not covered.

F&D argues that because "policy territory" is defined broadly in respondent's insurance policies, general liability coverage is not limited to a specific premises. The liability provisions state:

" **'Policy territory'** means (1) the United States of America, its territories or possessions, or Canada, or (2) international waters or air space, provided the **bodily injury** or **property damage** does not occur in the course of travel or transportation to or from any other country, state, or nation, or (3) anywhere in the world with respect to damages because of **bodily injury** or **property damage** arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above . . . ."

Appellant's contention lacks merit. Where a contract is partly written or printed under the special direction of the parties, and the remainder is copied from a form prepared without reference to the particular contract in question, the parts which are original control those which are not. (Civ. Code, § 1651.)[2] The declarations pages tailored for these particular policies limit the site of coverage to the Marina Inn. When information in the declarations conflicts with general information in the preprinted forms, the former prevails over the latter.

F&D argues that the Charter Oak policies are ambiguous, and any ambiguity in the policies is resolved against the insurer. Appellant fails to recognize that other rules of contractual interpretation also apply.

---

[2]All further statutory references are to this code.

 Courts implement the ordinary rules of contract interpretation when construing insurance contracts. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) A contract must be interpreted to give effect to the mutual intention of the parties at the time of contracting. (§ 1636.) The intention of the parties is to be ascertained from the language of the contract, to the extent that the language is clear and explicit. (§ 1638.) If the contract is ambiguous, ". . . it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (§ 1649.) The contract is interpreted against the party who caused the uncertainty to exist only if application of these rules does not resolve the ambiguity. (§ 1654.) Courts generally resolve ambiguities in the insurance context in favor of coverage. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

 The language of the Charter Oak policies plainly limits coverage to a motel and restaurant in Russellville, Arkansas. Since the policies are not ambiguous, we interpret them to give effect to the parties' mutual intent.

### DISPOSITION

The judgment is affirmed. Charter Oak is awarded its costs on appeal.

Vogel (C. S.), P. J., and Cooper, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied November 18, 1998.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.