[No. D036608. Fourth Dist., Div. One. Jan. 2, 2002.]

BARBARA ALLEN, Plaintiff and Appellant, v.
FRANK L. SMITH et al., Defendants and Respondents.

1272

## COUNSEL

Stephen V. McCue for Plaintiff and Appellant.

Ross, Dixon & Bell and James Dalessio for Defendants and Respondents.

## OPINION

**HALLER, J.**—In this breach of contract action, plaintiff Barbara Allen appeals a summary judgment in favor of defendants Frank L. Smith and Jeri R. Schwartz Smith. The court found the parties' agreement gave Allen an option to purchase the Smiths' residential property, and after declining to exercise the option she was not entitled to a refund of any portion of her $100,000 deposit because it was a nonrefundable option fee. Allen persuasively contends the contract was actually a purchase and sale agreement and the court's misinterpretation of it as an option and the $100,000 deposit as consideration for an option requires reversal. We also conclude the court should have granted Allen's motion for summary adjudication on her breach of contract cause of action. Accordingly, we reverse the judgment and instruct the court to enter an order granting Allen summary adjudication on that claim.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 10, 1999, Allen submitted an offer to purchase the Smiths' Rancho Santa Fe home for $1,775,000. The offer was on a standard form published by the California Association of Realtors entitled "Residential Purchase Agreement (and Receipt for Deposit)." Under the offer, Allen was required to deposit 3 percent of the purchase price into escrow, consisting of an initial deposit of $20,000 and an additional deposit of $33,250 after the removal of contingencies related to an inspection of the property. The offer contained the following liquidated damages clause: "If Buyer fails to complete this purchase by reason of any default of Buyer, Seller shall retain, as liquidated damages for breach of contract, the deposit actually paid. However, if the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then *the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer.* Buyer and Seller shall also sign a separate liquidated damages provision for any increased deposit . . . ." (Italics added.)

The same day, the Smiths presented Allen with a California Association of Realtors form entitled "Counter Offer No. . . . 1." Allen's real estate agent had written the following on the form: "1.) All contingencies to be removed 21 days from acceptance. Buyer's increased deposit to be $80,000—total deposit of $100,000 to be released to seller as a *non refundable purchase option monies.* [¶] 2.) Seller will pay up to $5,000 . . . for any and all repairs suggested by inspection." (Italics added.) Allen accepted the counteroffer

and she and the Smiths signed it and the original offer. They also initialed the liquidated damages clause and the page of the offer setting forth the deposit amounts of $20,000 and $33,250. Escrow was scheduled to close June 20, 1999.

Allen paid the initial deposit of $20,000 into escrow. In late March 1999 she released all contingencies and paid the additional $80,000 deposit into escrow. The escrow company immediately released the $100,000 to the Smiths.

In late May 1999 Allen notified the Smiths she would not complete the purchase. Allen conceded the Smiths were entitled to retain her initial $20,000 as liquidated damages, but demanded that they refund the $80,000 additional deposit on the ground the parties had not signed a separate liquidated damages provision covering the increased deposit as required by statute. (See Civ. Code, § 1678.)[1] The Smiths refused to give Allen a refund.[2]

Allen sued the Smiths for breach of contract, money had and received, conversion, fraud and specific performance. Allen alleged that by retaining the additional $80,000 deposit, the Smiths "sought to circumvent the policy of the law concerning liquidated damages in residential sales contracts through a sham mechanism in which [they] labeled the deposit monies falsely as option monies."

Allen moved for summary adjudication of her breach of contract and money had and received causes of action. The Smiths moved for summary judgment. In a telephonic ruling the court denied Allen's motion and granted the Smiths' motion. The court determined "[t]here is no ambiguity as to the meaning of an 'option.' Accordingly, . . . as a matter of law . . . the provision in the counteroffer was not liquidated damages and instead was a separate option agreement. Therefore, the provision was not required to comply with [statutory liquidated damages provisions]."

After a hearing, the court took the matter under submission. The court then confirmed its telephonic ruling and entered judgment for the Smiths. The court later awarded the Smiths costs of suit and $25,000 in attorney fees.

---

[1] Statutory references are to the Civil Code except when otherwise specified.
[2] The Smiths were able to sell their home to another buyer for $1,740,000.

## DISCUSSION

## I

### *Standard of Review*

■ A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant satisfies this burden by showing ' "one or more elements of" the 'cause of action' . . . 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Id.* at p. 849.) But "if the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to the plaintiff's showing." (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534 [80 Cal.Rptr.2d 94].) In determining whether those burdens have been met, we review the record de novo. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].)

## II

### *Purchase and Sale Agreement or Option?*

■ "A contract must be interpreted to give effect to the mutual, expressed intention of the parties. Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone." (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 473 [47 Cal.Rptr.2d 12]; §§ 1636, 1638, 1639.) "Contract formation is governed by objective manifestations, not the subjective intent of any individual involved. [Citations.] The test is 'what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" (*Roth v. Malson* (1998) 67 Cal.App.4th 552, 557 [79 Cal.Rptr.2d 226].)

Parol evidence may be admitted to construe ambiguous contract terms (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554]), but here the parties agree the contract is unambiguous and contains their entire agreement. ■ Allen contends the contract shows on its face that it is a purchase and sale agreement with a liquidated damages clause, in contrast to

an option to purchase for which $100,000 was the nonrefundable consideration. She asserts the use of the term "option" in the counteroffer was designed to circumvent statutory liquidated damages provisions and a non-refundable deposit of $100,000 is an illegal penalty for breach of contract.

■ The measure of damages for the buyer's breach of an agreement to purchase real property is "the amount which would have been due to the seller under the contract over the value of the property to him or her, consequential damages according to proof, and interest." (§ 3307.) In practice, however, the seller's damages may be limited because he or she cannot recover " 'loss of bargain' damages if the property is worth more than the sale price when the buyer breaches, or if the value exceeds the sale price at or before the time of the trial." (1 Cal. Real Property Sales Transactions (Cont.Ed.Bar 3d ed. 1998) The Purchase and Sale Agreement, § 4.128, p. 381; *Spurgeon v. Drumheller* (1985) 174 Cal.App.3d 659, 664 [220 Cal.Rptr. 195].)

■ To avoid uncertainty and litigation if a default occurs, the parties to a contract may use a liquidated damages clause to determine the measure of damages in advance. (See *Hong v. Somerset Associates* (1984) 161 Cal.App.3d 111, 114 [207 Cal.Rptr. 597].) A liquidated damages clause is generally valid unless the party challenging it shows it was unreasonable under the circumstances existing at the time the parties entered into the contract. (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 [73 Cal.Rptr.2d 378, 953 P.2d 484]; § 1671, subd. (b).) In the absence of a reasonable relationship between the liquidated damages and the actual damages the parties could have contemplated for breach, "a contractual clause purporting to predetermine damages 'must be construed as a penalty.' [Citation.]" (*Ridgley v. Topa Thrift & Loan Assn., supra,* 17 Cal.4th at p. 977.) " 'A contractual provision imposing a "penalty" is ineffective, and the wronged party can collect only the actual damages sustained.' [Citations.]" (*Ibid.*; § 3275.)

When the contract is for the purchase and sale of residential property the buyer intends to occupy, liquidated damages may not exceed the amount the buyer actually paid as a deposit. A liquidated damages provision is presumed valid if the deposit does not exceed 3 percent of the purchase price, unless the buyer establishes that amount is unreasonable. If the deposit exceeds 3 percent of the purchase price, the liquidated damages provision is presumed

invalid, unless the party seeking to uphold the provision establishes its reasonableness. (§ 1675, subds. (c) and (d).)[3]

In contrast to a bilateral purchase and sale agreement, an option is a unilateral contract "by which the owner of property invests another with the exclusive right to purchase it at a stipulated price within a limited or reasonable time without imposing any obligation upon the party to whom it is given [citation] . . . . [A]n option given for a consideration may not be terminated without the consent of the optionee during the time specified therein." (*Prather v. Vasquez* (1958) 162 Cal.App.2d 198, 204 [327 P.2d 963].) "An option contract relating to the sale of land is . . . not a sale of the property but is a sale of the right to purchase." (*Beran v. Harris* (1949) 91 Cal.App.2d 562, 564 [205 P.2d 107]; 1 Cal. Real Property Sales Transactions, *supra,* Options, § 7.3, p. 586.)

A consideration paid for a freely negotiated option does not constitute liquidated damages or a penalty because the payment obligation does not arise on a breach of contract by the optionee, but as an alternative to performance. (*Blank v. Borden* (1974) 11 Cal.3d 963, 969-971 [115 Cal.Rptr. 31, 524 P.2d 127].) "Payment of the option price avoids any issue for the seller of whether retention of the deposit is enforceable as liquidated damages," and thus "[m]any sophisticated sellers insist on structuring a sale agreement as an option for that reason alone." (1 Cal. Real Property Sales Transactions, *supra,* Options, § 7.34, p. 603.)

It is established that express terms such as "option" and "liquidated damages" are not dispositive in the interpretation of a real estate contract. (*Welk v. Fainbarg* (1967) 255 Cal.App.2d 269, 273 [63 Cal.Rptr. 127].) "Whether any particular document is . . . an 'option' or 'an agreement of sale' depends on the nature and terms of the document and the obligation of the parties, regardless of how the parties may label or identify the document. The test is whether . . . there is a mutuality of obligation. If both parties are obligated to perform, it is an agreement of sale; if only one party (the optionor-offeror) is obligated to perform, it is merely an option." (1 Miller & Starr, Cal. Real Estate (3d ed. 2000) Specific Contracts, § 2:8, pp. 26-27, fn. omitted.) "When deciding whether a particular contract is bilateral or unilateral, the courts favor an interpretation that makes the contract bilateral. A bilateral contract immediately and fully protects both parties by binding each to its terms *on its execution.*" (*Id.,* Contracts, § 1:2, p. 7.)

We conclude that the parties intended to enter into a purchase and sale agreement and not an option. The contract consists of a California

---

[3]When a purchase and sale agreement contains a liquidated damages provision, the seller may nonetheless elect to sue for specific performance. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 535, p. 475; §§ 1680, 3387, 3389.)

Association of Realtors standard form deposit receipt and counteroffer. These forms ordinarily constitute a binding and enforceable contract for the purchase and sale of the described property. (*Meyer v. Benko* (1976) 55 Cal.App.3d 937, 944 [127 Cal.Rptr. 846]; *Mattei v. Hopper* (1958) 51 Cal.2d 119, 122 [330 P.2d 625]; 1 Miller & Starr, Cal. Real Estate, *supra*, Specific Contracts, § 2:2, pp. 2-4.) A legitimate option ordinarily consists of an agreement to grant an irrevocable right to purchase for independent consideration, and a separate purchase and sale agreement attached as an exhibit thereto. (*Torlai v. Lee* (1969) 270 Cal.App.2d 854, 858 [76 Cal.Rptr. 239]; 1 Cal. Real Property Sales Transactions, *supra,* Options, §§ 7.2, 7.4, pp. 586, 587.)

Notably, the contract contains no provision giving Allen the complete discretion to decide whether to proceed with the purchase. Rather, there is mutuality of obligation. The contract includes inspection contingencies and required Allen to complete inspections and remove all contingencies within 21 days of acceptance. The contract provides that on Allen's removal of contingencies she "shall conclusively be deemed to have . . . [e]lected to proceed with the transaction." ▇ A chief advantage of a true option is that it allows the optionee to inspect the property without meeting contingency requirements. "Because the optionee has complete discretion to decide whether to exercise an option and proceed with the purchase, questions of good faith and satisfaction of conditions do not arise." (1 Cal. Real Property Sales Transactions, *supra,* Options, § 7.27, p. 601.)

Moreover, the Smiths concede that if inspection contingencies were unsatisfied, Allen was entitled to a return of her initial $20,000 deposit. Accordingly, the deposit cannot be considered independent consideration for an option. ▇ "In the usual *purchase agreement,* . . . the deposit is part of the consideration, so that when a condition of the agreement fails, each party is entitled to the return of what was deposited into escrow." (Cal. Real Property Remedies Practice (Cont.Ed.Bar 1982) § 4.33, pp. 128-129, italics added.)

▇ Additionally, the contract does not specify the period within which an option must be exercised. ▇ An option "is a *right* acquired by contract to accept or reject a present offer within a *limited time in the future.*" (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 688 [119 Cal.Rptr. 491, 532 P.2d 139], second italics added.) "The length of time within which an option may be exercised is an essential term to an option contract." (1 Cal. Real Property Sales Transactions, *supra,* Options, § 7.10, p. 591.) Moreover, an option contract may prescribe the method for the exercise of the option. (*Jenkins v. Tuneup Masters* (1987) 190 Cal.App.3d 1, 7 [235 Cal.Rptr. 214].)

The contract here does not prescribe a mode of acceptance. A reasonable option period and mode of acceptance may be implied where none are specified in the contract (*Palo Alto Town & Country Village, Inc. v. BBTC Company* (1974) 11 Cal.3d 494, 499 [113 Cal.Rptr. 705, 521 P.2d 1097]; *Santa Clara Properties Co. v. R. L. C., Inc.* (1963) 217 Cal.App.2d 840, 854 [32 Cal.Rptr. 333]), but the absence of these terms in the contract here are additional indicia the parties did not intend to create an option.

Further, the contract contains a "[t]ime is of the essence" clause, and "[s]uch considerations have nothing to do with options." (*Auslen v. Johnson* (1953) 118 Cal.App.2d 319, 322 [257 P.2d 664]; *Wilson v. Ward* (1957) 155 Cal.App.2d 390, 394 [317 P.2d 1018].) Rather, on the lapse of the option period the "matter is completely ended and the offer is withdrawn." (*Auslen v. Johnson, supra,* 118 Cal.App.2d at p. 322.)

The Smiths claim that under rules of contract interpretation, the counteroffer language "nonrefundable purchase option monies" prevails because it is handwritten. (See *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.* (1998) 66 Cal.App.4th 1080, 1087 [78 Cal.Rptr.2d 429]; § 1651 [terms in a preprinted form that are repugnant to written terms must be disregarded].) However, Allen and the Smiths also initialed the liquidated damages provisions of the contract, and such damages would not be available if the agreement were an option.

At oral argument, the Smiths asserted the option did not materialize until Allen released the contingencies and paid the additional $80,000 deposit. However, "[w]here a point is merely asserted by counsel without any . . . authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3d 768, 783 [86 Cal.Rptr. 906], disapproved of on another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60, fn. 3 [98 Cal.Rptr. 217, 490 P.2d 537]; *People v. Sierra* (1995) 37 Cal.App.4th 1690, 1693, fn. 2 [44 Cal.Rptr.2d 575].) In any event, the Smiths' assertion lacks merit. Allen could not have received an option when she paid the additional $80,000 deposit, because at the same time she released all contingencies and became bound to proceed with the purchase.

Because the parties entered into a purchase and sale agreement, and not an option, the Smiths were not entitled to summary judgment.

### III

#### *Amount of Liquidated Damages*

The Smiths assert that even if the contract were interpreted to be a purchase and sale agreement, they are entitled to retain Allen's total

$100,000 deposit as reasonable liquidated damages. They cite section 1675, subdivision (d), which provides: "If the amount actually paid pursuant to the liquidated damages provision exceeds 3 percent of the purchase price, the provision is invalid *unless the party seeking to uphold the provision establishes that the amount actually paid is reasonable as liquidated damages.*" (Italics added.)

The Smiths did not meet their burden of persuasion. Their separate statement does not include the reasonableness of the $100,000 deposit as liquidated damages as an undisputed issue. "[A]*ll* material facts must be set forth in the separate statement. '. . . Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement.*' [Citations.]" (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368]; Code Civ. Proc., § 437c, subd. (b); Cal. Rules of Court, rule 342(d).) Further, the Smiths did not submit evidence establishing as a matter of law that $100,000 is reasonable as liquidated damages. Notably, there is no evidence that amount bears a rational relationship to the range of harm the Smiths may suffer on breach or that the parties anticipated that proving of actual damages may be onerous. (See Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (1985 ed.) foll. § 1671, p. 497.)

In any event, as Allen points out, the liquidated damages provision of the contract states "the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer." The purchase price was $1,775,000, 3 percent of which is $53,250.

 Allen also contends the Smiths may retain only her initial $20,000 deposit, because the counteroffer increasing the additional deposit from $33,250 to $80,000 does not comply with section 1678, which provides: "If more than one payment made by the buyer is to constitute liquidated damages under Section 1675, the amount of any payment after the first payment is valid as liquidated damages only if . . . a separate liquidated damages provision satisfying the requirements of Section 1677 is separately signed or initialed by each party to the contract for each such subsequent payment."[4]

It is true that the counteroffer does not refer to the increased deposit of $80,000 as "liquidated damages." However, we conclude it substantially

---

[4]Section 1677 provides: "A provision in a contract to purchase and sell real property liquidating the damages to the seller if the buyer fails to complete the purchase of the property is invalid unless: [¶] (a) The provision is separately signed or initialed by each party to the contract; and [¶] (b) If the provision is included in a printed contract, it is set out either in at least 10-point bold type or in contrasting red print in at least eight-point bold type."

complies with sections 1677 and 1678, in that it was signed by the parties, and at the same time they signed the deposit receipt. Moreover, Allen's real estate agent wrote the language in the counteroffer. (See *Guthman v. Moss* (1984) 150 Cal.App.3d 501, 512 [198 Cal.Rptr. 54] [substantial compliance with § 1677 when liquidated damages clause not initialed but appeared on same page as parties' signatures and party objecting to the clause drafted it as amendment to escrow instructions].) Sections 1677 and 1678 are intended to "make it more likely that the parties will appreciate the consequences" of entering into a liquidated damages provision. (Cal. Law Revision Com. com., 9 West's Ann. Civ. Code, *supra*, foll. § 1677, pp. 537-538.) When read together, the deposit receipt and counteroffer show the parties' awareness that the increased deposit was subject to the liquidated damages clause. The total deposit amount is valid, of course, only to the extent it does not exceed 3 percent of the purchase price.

Allen's contention that the Smiths are entitled to retain only her initial $20,000 deposit is further belied by the provision of the deposit receipt providing for total liquidated damages of $53,250. Allen does not assert that the provision violates section 1677 or 1678, or that $53,250 is an unreasonable amount of liquidated damages. (See § 1675, subd. (c) [liquidated damages of 3 percent of purchase price presumed valid unless buyer proves otherwise].) Notwithstanding any arguable infirmity in the counteroffer, the parties plainly intended that the Smiths would be entitled to at least 3 percent of the purchase price as liquidated damages.

We agree with Allen that the court should have granted her motion for summary adjudication on her breach of contract action, in that the parties entered into a purchase and sale agreement and not an option, and the Smiths breached the agreement by not refunding the amount of her deposit exceeding $53,250, 3 percent of the purchase price. We conclude that Allen is entitled to a refund of $46,750 from the Smiths.[5]

## IV

### *Attorney Fees Award*

After entry of judgment, the court awarded the Smiths costs and $25,000 in attorney fees as the prevailing parties on the contract. (§ 1717.) The

---

[5]In response to our questioning at oral argument, the Smiths' counsel stated that if we interpreted the contract as a purchase and sale agreement, they were only entitled to retain Allen's initial $20,000 deposit as liquidated damages. We do not deem this a concession as counsel was merely trying to remain consistent with his argument the agreement was an option that arose on Allen's payment of the additional $80,000 deposit.

Given our holding, we need not determine whether Allen could also have recovered against the Smiths on a money had and received theory.

Smiths suggest that notwithstanding a reversal of the judgment, they remain entitled to attorney fees because a postjudgment order awarding attorney fees is separately appealable (Code Civ. Proc., § 904.1, subd. (a)(2)) and Allen did not appeal the order.

■ An appellate court has no jurisdiction to review an award of attorney fees made after entry of the judgment, unless the order is separately appealed. (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 [99 Cal.Rptr.2d 366].) " '[W]here several judgments and/or orders occurring close in time are separately appealable . . . , each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal.' [Citation.]" (*Ibid.*; *Fish v. Guevara* (1993) 12 Cal.App.4th 142, 147-148 [15 Cal.Rptr.2d 329].)

■ However, this does not mean that an award of attorney fees to the party prevailing stands after reversal of the judgment. "An order awarding costs falls with a reversal of the judgment on which it is based." (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402 [267 Cal.Rptr. 62]; *Purdy v. Johnson* (1929) 100 Cal.App. 416, 421 [280 P. 181].) "[T]he successful party is never required to pay the costs incurred by the unsuccessful party." (*Ibid.*) After reversal of a judgment "the matter of trial costs [is] set at large." (*Id.* at p. 420.) Although we cannot reverse the order granting costs and fees, the trial court should do so on remand.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for its entry of an order granting Allen summary adjudication on the breach of contract action and awarding her damages of $46,750. Allen is awarded costs on appeal.

Benke, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied January 23, 2002, and the opinion was modified to read as printed above.