Filed 8/19/24  Benton v. Telecom Network Specialists CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LORENZO BENTON et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> TELECOM NETWORK SPECIALISTS, INC., <br><br> Defendant and Appellant. | B318867 <br><br> (Los Angeles County Super. Ct. No. BC349267) |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Reversed.

Aiman-Smith & Marcy, Randall B. Aiman-Smith, Reed W.L. Marcy, Hallie Von Rock; Law Offices of Jared E. Peterson and Jared E. Peterson for Plaintiffs and Appellants.

McDermott Will & Emery, Pankit J. Doshi, Saniya Ahmed, Rae Chung, Paul W. Hughes, Andrew A. Lyons-Berg; Greenberg Traurig and Ronald Holland for Defendant and Respondent.

# INTRODUCTION

Lorenzo Benton filed this wage-and-hour class action in 2006 against Telecom Network Specialists, Inc. (TNS)—a company that maintains and upgrades equipment at cell sites in California—on behalf of several hundred technicians who serviced the equipment at the sites. In 2012 the trial court denied Benton's motion for class certification. We reversed. (*Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701 (*Benton I*).)

On remand the trial court, after granting Benton's motion for class certification, granted the class plaintiffs' motion for summary adjudication on some of the causes of action, found in favor of the plaintiffs on other causes of action following a court trial, and entered judgment. We reversed again, holding (among other things) the trial court erred in granting summary adjudication in favor of the class on the causes of action for failure to provide meal and rest breaks. (See *Benton v. Telecom Network Specialists, Inc.* (Oct. 13, 2023, B312572 [nonpub. opn.] (*Benton II*).)

While the appeal in *Benton II* was pending, the trial court issued an order on Benton's motion for attorneys' fees—an order from which both parties now appeal. Because an award of attorneys' fees falls with a reversed judgment, and because we cannot conclude with certainty the trial court will make the same fee award, we reverse the order.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Benton Prevails on Several Causes of Action, and the Trial Court Enters Judgment*

In 2006 Benton filed a class action complaint against TNS on behalf of TNS technicians who worked at cell sites in California. Benton asserted causes of action for failure to provide meal and rest breaks, failure to pay overtime compensation, waiting time penalties under Labor Code section 203,[1] and penalties under section 226 for failure to furnish accurate wage statements. (*Benton II*, *supra*, B312572.)

The trial court resolved several causes of action on motions for summary adjudication. On the causes of action for failure to provide meal and rest breaks and failure to pay overtime compensation, the court granted motions by Benton on behalf of the class for summary adjudication. On the causes of action for waiting time and wage statement penalties under sections 203 and 226, the court separately analyzed two sets of claims: (1) those for penalties for unpaid and unreported meal and rest break premiums and (2) those for penalties for unpaid and unreported overtime compensation. On the first set of claims— those based on the meal and rest break premiums—the court granted a motion by TNS for summary adjudication. (*Benton II*, *supra*, B312572.) On the second set of claims—those based on overtime compensation—the court conducted a court trial. The court ultimately found in favor of the class on the claim for waiting time penalties under section 203, but in favor of TNS on the claim for wage statement penalties under section 226. Following the court trial, the court entered judgment awarding

---

[1] Undesignated statutory references are to the Labor Code.

the class a total of $9,494,585 on the causes of action on which it prevailed. Both Benton and TNS appealed from the judgment. (*Benton II*, *supra*, B312572.)

B. *The Trial Court Grants Benton's Motion for Attorneys' Fees and Costs*

While the appeal in *Benton II* was pending, Benton filed a motion for attorneys' fees and costs. The court ruled Benton was entitled to fees and costs under section 1194 on the cause of action for failure to pay overtime compensation.[2] The court further ruled that, before it granted Benton's motion for summary adjudication on that cause of action in February 2019, all of the claims were intertwined and that therefore Benton was entitled to attorneys' fees and costs for all work performed in the case before the February 2019 order.

The court ruled, however, that once the class prevailed on summary adjudication, Benton's remaining claims for penalties were no longer intertwined with the then-resolved cause of action for failure to pay overtime compensation. The court ruled Benton therefore was not entitled to attorneys' fees under section 1194 for work performed after the February 2019 order granting summary adjudication (including fees relating to the court trial). Similarly, the court ruled Benton was not entitled under other provisions of the Labor Code or the Code of Civil Procedure to

---

[2] Section 1194, subdivision (a), provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

4

attorneys' fees incurred on the claims for waiting time and wage statement penalties. The court, however, awarded as fees under the common fund doctrine a percentage of the class's recovery on the claim for section 203 waiting time penalties (an award less than Benton's requested lodestar under the asserted statutory bases).

The court awarded Benton over $17 million in attorneys' fees and $700,000 in costs, plus an incentive award for Benton and another class representative. The award included a lodestar of $7,893,640, with a lodestar multiplier of 2.0 (for a total of over $15.7 million) for fees incurred prior to the February 2019 order granting the motion for summary adjudication.

Benton appealed, arguing (among other things) that, "[t]hrough a series of errors, the trial court failed to award statutory fees for work done after February 2019 and reduced the lodestar for work done prior to February 2019 to $7,893,640, resulting in a 41% cut to Plaintiffs' lodestar for work on the merits." TNS cross-appealed, arguing (among other things) the trial court "awarded too much" in attorneys' fees, including for "excessive and unreasonable intra-office communications and non-compensable travel time."

C.    *We Reverse the Judgment in* Benton II

After the trial court issued its attorneys' fee order, we issued our opinion in *Benton II, supra,* B312572 reversing the judgment. We held that the trial court erred in granting the motion for summary adjudication in favor of the class on the causes of action for failure to provide meal and rest breaks. We concluded TNS created triable issues of material fact regarding whether some class members were informed of their right to take

5

breaks, were authorized to take breaks, and in fact took breaks. We also held the trial court erred in granting TNS's motion for summary adjudication on the claims for waiting time and wage statement penalties under sections 203 and 226 for unpaid and unreported meal and rest break premiums. We held the trial court did not err, however, in granting the motion for summary adjudication in favor of the class on the cause of action for failure to pay overtime compensation or in finding in favor of the class after the court trial on the claim for waiting time penalties for unpaid overtime compensation. (*Benton II*, *supra*, B312572.)

## DISCUSSION

A.  *Because We Reversed the Judgment in* Benton II*, We Must Reverse the Award of Attorneys' Fees and Costs*

TNS argues that, because we reversed the judgment in *Benton II*, we must also reverse the order awarding attorneys' fees and costs. TNS argues that "[t]hese attorney-fee cross[-]appeals are moot" and that the "merits judgment on which the fee award is predicated has been reversed, with the result that the order awarding fees is automatically nullified as well." TNS contends that our reversal of the judgment in *Benton II* "necessarily vacated the fee order" and that it is "for the trial court on remand, once it has entered a new final judgment, to reassess whether, and in what amount, attorney fees might be available."

Mootness aside,[3] TNS is correct. As stated, an order awarding attorneys' fees and costs "'"falls with a reversal of the judgment on which it is based."'" (*Gunther v. Alaska Airlines,*

---

[3]  See *infra*, section B.

6

*Inc.* (2021) 72 Cal.App.5th 334, 358; see *Rose v. County of San Benito* (2022) 77 Cal.App.5th 688, 728; *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 263; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 220.) Because we reversed the judgment on which the award of fees was based, we must also reverse the order on the motion for attorneys' fees. (See *Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 107 ["Because we reverse the judgment in [the plaintiff's] favor, it necessarily follows that she is not presently entitled to any award of attorney fees" and that the "trial court's attorney fees order is therefore reversed"]; *Bevis*, at p. 263 ["[o]ur reversal of the judgment also necessarily compels the reversal of the award of attorney fees and costs to plaintiffs based on the judgment"].)

Benton contends we need not reverse the fee order because the "entitlement to the fee award was based . . . solely on [his] overtime claim," which we did "not reverse[ ]." But even where "there is a limited reversal," we still "remand for the trial court to consider anew the propriety of attorney's fees unless we can say with certainty the court would have exercised its discretion the same way had the successful party not prevailed on the issue on which we reverse." (*Gunther v. Alaska Airlines, Inc.*, *supra*, 72 Cal.App.5th at pp. 358-359; see *Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 307; *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207, 1233-1234.)

The problem for Benton is that, even if *Benton II* were a "limited reversal" (which is hard to say: we reversed a lot in *Benton II),* we reversed the order granting the motion for summary adjudication in favor of the class on the meal and rest break claims, and the attorneys' fee order was based, in part,

on the class's success on those claims.  The trial court applied a lodestar multiplier of 2.0 based, in part, on the fact that "Class counsel obtained a $9.5 million judgment, which is $15,000 per class member."  $7,288,266 of that $9.5 million judgment (nearly 77 percent) was for the meal and rest break claims.  Now that we have directed (in *Benton II*) the trial court to vacate the order granting TNS's motion for summary adjudication on those claims, the class has lost (at least for now) most of the recovery justifying the lodestar multiplier.  Therefore, until the meal and rest break claims are fully resolved, we cannot say with certainty that the court would again exercise its discretion to apply a lodestar multiplier of 2.0, or even that the court would apply a multiplier to the same lodestar.  (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 [trial court "has broad discretion to adjust" the lodestar amount]; *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 510 ["trial court has broad discretion to increase or reduce the proposed lodestar amount based on the various factors identified in case law"]; see also *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 920 [trial court ""has the discretion to increase or reduce the lodestar figure by [adjusting the] "'multiplier'" based on a variety of factors""].)

Benton argues that, because the trial court made only "passing mention" of the class's recovery, the court did not place "significant reliance on the amount of recovery."  That is not a fair characterization of the court's ruling.  In the motion for attorneys' fees and costs, Benton asked the trial court to apply a lodestar multiplier of 2.5.  The court listed six factors supporting its ruling a lodestar multiplier of 2.0 was appropriate.  One of those six factors was the $9.5 million ($15,000 per class member)

8

the class recovered.  We presume the court meant what it said: The total recovery for the class was a factor underlying the court's decision to adjust the lodestar upward.

B.      *We Decline To Exercise Our Discretion To Hear the Appeal*

Benton argues that, even if our decision in *Benton II* "moots the fees appeal," several general exceptions to the mootness doctrine justify denying TNS's motion to dismiss the appeal and exercising our discretion to decide some or all of the issues in this appeal.  But we are not dismissing the appeal from the order awarding attorneys' fees because it is moot.  Indeed, "dismissal of an appeal for mootness operates as an affirmance of the underlying judgment or order" (*In re D.P.* (2023) 14 Cal.5th 266, 285), which is not what either side wants or what we are doing.[4] We are reversing the fee order because we reversed the judgment on which it was based and we cannot say with certainty that on remand the trial court will award the same amount of attorneys' fees.  Benton (when appropriate) will undoubtedly file a new motion for attorneys' fees, and the trial court will recalculate the amount of fees.  It would be a waste of the parties' and the courts' resources to decide issues that the trial court will have to decide anew and that may or may not arise in a subsequent appeal. (See *Bevis v. Terrace View Partners, LP*, *supra*, 33 Cal.App.5th at p. 263 [when a reviewing court reverses a judgment, the issue of attorneys' fees and costs is """"set at large"""]; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [same].)

---

[4]      And which makes it odd TNS filed a motion to dismiss the appeal:  Granting TNS's motion and dismissing the appeal would affirm the order TNS is challenging.

In any event, the reasons Benton gives for exercising our discretion to review issues he raises are not persuasive. For example, Benton argues we should decide this appeal because it concerns two issues of broad public interest: "application of Labor Code section 218.5 to claims for waiting time penalties under *Naranjo* [*v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93]" and "application of the 'public benefit' theory" of attorneys' fees under Code of Civil Procedure section 1021.5 "to successful Labor Code litigation." Neither concern justifies deciding this appeal now.

On the first issue, even if there is a general public interest (at least among employment litigators) in the application of section 218.5 to waiting time penalties under section 203, Benton does not identify a dispute we need resolve that would provide precedential guidance in future litigation. Section 218.5 authorizes a prevailing employee to recover attorneys' fees and costs in an "action brought for the nonpayment of wages." In its order on the motion for attorneys' fees, the trial court ruled that waiting time penalties under section 203 are not "wages" under section 218.5 and that therefore Benton was not entitled under section 218.5 to attorneys' fees and costs for work performed on the claim for waiting time penalties after the February 2019 summary adjudication order.

The former ruling turned out to be wrong. In *Naranjo*, decided after the trial court ruled on the motion for attorneys' fees, the Supreme Court held that "missed-break premium pay constitutes wages for purposes of . . . section 203, and so waiting time penalties are available under that statute if the premium pay is not timely paid." (*Naranjo v. Spectrum Security Services, Inc., supra*, 13 Cal.5th at p. 117.) TNS concedes that, under

*Naranjo*, "the law is now that Section 218.5 does authorize recovery of attorney fees for waiting-time claims under Section 203" and that we should therefore "remand to the trial court to decide in the first instance" how *Naranjo* applies to Benton's request for fees for work performed on his claim for waiting time penalties. Given TNS's concession following *Naranjo*, there is no dispute about the application of section 218.5, and therefore no need for us to weigh in on the issue to guide these or other parties in the future.

On the second issue, Benton's appeal does involve Code of Civil Procedure section 1021.5, but that does not mean the public has an interest in the issues in this appeal. Benton contends the trial court erred in not awarding attorneys' fees under section 1021.5 for all work performed after the 2019 order granting the motion for summary adjudication. Claims for attorneys' fees under section 1021.5, however, are case-specific and discretionary. The court may award fees under section 1021.5 only if "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (See *Vasquez v. State of California* (2008) 45 Cal.4th 243, 251.) "'[U]tilizing its traditional equitable discretion,' [the trial] court 'must realistically assess the litigation and determine, from a practical perspective' [citation] whether or not the statutory criteria have been met." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142; see *Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th

552, 574.) There is no pressing need to decide these issues now. (See *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 ["given the fact-driven nature of the questions presented, it is unlikely that our resolution of the . . . appeal would 'provide much needed guidance for "the orderly administration of justice"'"]; *Giles v. Horn* (2002) 100 Cal.App.4th 206, 228 ["[b]ecause plaintiffs' claim is a particularly factual determination that must be resolved on a case-by-case basis, . . . it is not one on which we would exercise our discretion to address on the merits"].)

Benton also contends his entitlement to attorneys' fees and costs for work performed after the 2019 summary adjudication order "is ripe in this appeal" and, "if left unresolved, might preclude Plaintiffs from litigating their right to recover for that work even though that issue has not been addressed by this Court." That's not right either. There is nothing to prevent Benton from continuing to litigate this issue on remand. Once the trial court resolves all claims and enters a new judgment, Benton may file a new motion for attorneys' fees and, if unsuccessful, may appeal from that order.

Finally, Benton argues we should decide two issues he raises in his appeal that will "necessarily recur" if we do not. First, Benton argues the parties will continue to dispute whether he is entitled to attorneys' fees for work performed after the 2019 summary adjudication order. But as discussed, TNS acknowledges the Supreme Court's decision in *Naranjo v. Spectrum Security Services, Inc.*, *supra*, 13 Cal.5th 93 and concedes section 218.5 applies to claims for waiting time penalties under section 203. Therefore, it is reasonably likely (if not certain) that the trial court will award Benton statutory

12

attorneys' fees, at least for some of the work performed after the 2019 summary adjudication order, and that several grounds Benton asserts for why he is entitled to attorneys' fees will not require further consideration.

Second, Benton contends his "assertions of error by the trial court in deciding the lodestar will also necessarily arise again if not decided in the present appeal." For example, Benton asserts the trial court erred in reducing the hourly rates of his attorneys and in calculating the number of reasonable hours they worked on the case. Perhaps. But that does not justify exercising our discretion to decide (some of) the attorneys' fees issues now. After our decision in *Benton II*, there are unresolved causes of action. Once there is a judgment on all of the causes of action, Benton is almost certain to file a new motion for attorneys' fees, and the parties may (read: will) litigate the issues raised by that motion, both in the trial court and on appeal from the trial court's ruling on that motion. It makes much more sense for the parties to brief, and the courts to decide, the issues raised by the future fee order in a single appeal, rather than through piecemeal appellate litigation. (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5-6 [""'piecemeal disposition and multiple appeals'" . . . "'tend to be oppressive and costly,'"" and "burden the courts and impede the judicial process in a number of ways"].)

**DISPOSITION**

The order is reversed.  TNS's motion to dismiss the appeal is denied.  Benton's request for judicial notice is denied.  The parties are to bear their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

14